UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Index No.

ZOOLOGICAL SOCIETY OF BUFFALO, INC.,

Plaintiff,                    COMPLAINT

vs.

CARVEDROCK, LLC and BURLINGTON
INSURANCE COMPANY,

Defendants.

---

## COMPLAINT

Plaintiff, Zoological Society of Buffalo Inc., by its attorneys, Law Offices of Laurie

G. Ogden, for its Complaint in this Declaratory Judgment Action, alleges upon information

and belief:

## PARTIES

1.      At all times hereinafter mentioned Zoological Society of Buffalo Inc.

(hereinafter "the Society") was and is a domestic corporation organized and operating under

the laws of New York State with a principal place of business in the City of Buffalo, County

of Erie, State of New York.

2.      At all times herein after mentioned, CarvedRock LLC, (hereinafter

"CarvedRock"), was a business incorporated under the laws of the State of Washington with

headquarters at 8511 South 119th Street, Seattle, WA and authorized to do business in the State of New York.

  3.  That at all times hereinafter mentioned, the Burlington Insurance Company was and is a foreign corporation licensed to issue insurance policies in the State of New York with an office for the transaction of business located in Burlington, North Carolina.

  4.  That Travelers Indemnity Company issued an OCP policy insuring the Society, (Policy # VTHPRS-5994C364) for the period effective 10/02/07 through 10/02/08.

  5.  That Burlington Insurance Company issued a Commercial Comprehensive General Liability, Policy #HGL 0016944 40, effective 9/26/07 to 9/26/08 to CarvedRock.  A true and correct copy of said policy is attached hereto as Exhibit "A".

  6.  The Society seeks a declaration of rights, duties and liabilities of the parties under said Burlington policy with respect to a lawsuit captioned, *David Oldread and Laura Oldread vs. CarvedRock, LLC and Zoological Society of Buffalo, Inc.*, Index number 2009–004772, pending in Supreme Court, Erie County, State of New York (hereinafter "the underlying action").

## JURISDICTION AND VENUE

  7.  This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1). The matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs and is between citizens of different States.

8. Venue is proper based on 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District. All defendants are doing business in this district.

## ALLEGATIONS OF FACT

9. That on or about April 21, 2009 David and Laura Oldread commenced an action against the Society by the filing of a Summons and Complaint with the Erie County Clerk. A true copy of the Summons and Complaint is annexed hereto as Exhibit "B". In this action the Oldreads seek to recover damages for injuries David Oldread sustained while working on the construction of a building.

10. That the aforesaid Summons and Complaint on behalf of the Oldreads seeks to recover damages from CarvedRock and from the Society based upon Mr. Oldread's injuries. The underlying action alleges causes of action against the Society and CarvedRock predicated upon the following facts: That on April 16, 2008 the Society was the owner of premises known as The Buffalo Zoo which premises were the plaintiff's jobsite. Plaintiff was engaged in the construction of a structure at the Zoo known as part of the South American Rain Forest. Plaintiff alleges that in the course of performing his duties as a laborer, he was caused to fall from scaffolding and as a result sustained serious physical injury. Plaintiff claims that the Society, as owner of the job site, is liable pursuant to Labor Law sections 200, 240(1) and 241(6) as well as in negligence. Plaintiff claims that CarvedRock, as a non-

employee contractor on the site, is liable based upon violations of Labor Law sections 200, 240(1) and 241(6) as well as in negligence.

11.    That Burlington acknowledged its duty to defend CarvedRock and referred its defense to the law firm of Cohen & Lombardo, PC which submitted an Answer on behalf of CarvedRock. A copy of said Answer is attached hereto as Exhibit "C".

12.    That on April 25, 2008 and June 17, 2008, Travelers tendered the defense and indemnification of the Society to Burlington on the grounds that CarvedRock's subcontract with Manning Squires Hennig required CarvedRock to name the Society, as Owner, as an additional insured on its subject policy. Copies of the tender letters are annexed hereto as Exhibit "D".

13.    That on June 17, 2008 Burlington disclaimed coverage under its policy for the claims set forth in plaintiffs' complaint in the underlying action. A copy of this disclaimer letter is annexed hereto as Exhibit "E".

14.    By correspondence dated August 8, 2008, Travelers renewed its tender of defense. A copy of this correspondence is annexed hereto in as Exhibit "F".

## COUNT I

15.    The Society repeats, reiterates and realleges every allegation contained in paragraphs 1 through 13 as if set forth fully herein.

16.    Pursuant to paragraph 22 of Subcontract with Manning Squires Hennig Co. Inc., Exhibit "G" annexed hereto, CarvedRock was to provide liability insurance to the Society, as Owner, with limits of $1 million per occurrence covering the Society as an

insured. The policy issued by Burlington (policy number HGL 0016944) Exhibit "A",

provides, in relevant part, in an Endorsement labeled "ADDITIONAL INSURED" as

follows:

<u>Name of Person or Organization:</u>

"Any person or organization with whom you have agreed,
in a written contract, that such person or organization should
be added as an additional insured on your policy, provided such
written contract is fully executed prior to an "occurrence" in
which coverage is sought under this policy."

17.   The Society has been sued in the underlying action for statutory violations of

the New York State Labor Law in part by virtue of its ownership of the subject premises and

therefore the Society is entitled to coverage under the Burlington policy.

## COUNT II

18.   The Society repeats, reiterates and realleges each and every allegation

contained in paragraphs 1 through 16 as if fully set forth herein.

19.   The Society is entitled to coverage under the Burlington policy. The

Burlington policy issued to CarvedRock LLC covering the period 9/26/07 to 9/26/08 (date of

plaintiff's accident was April 16, 2008) provides that Burlington will pay all sums anyone

protected by the policy must pay as damages caused by an accident covered by the policy.

(Exhibit "A").

20.   The plaintiff in the underlying action was allegedly injured when he fell from

scaffolding which had been erected for purposes of constructing a building. Hence, the

accident and injury constitute a covered "occurrence" as defined in the policy.

5

21.    CarvedRock had erected the subject scaffolding and was supervising Mr. Oldread's work at the time of is accident.

22.    The claims asserted in the Complaint in the underlying action therefore fall squarely within the coverage provisions of the Burlington policy and Burlington is obligated to defend and indemnify the Society in the underlying action.

WHEREFORE, the Society seeks a declaration from the Court that:

1. The disclaimer and refusal of Burlington to defend and indemnify the plaintiff, the Society, was improper, wrongful, unfounded and untimely;

2. Burlington is obligated to defend and indemnify the plaintiff, the Society, and to reimburse the plaintiff, the Society, for the legal fees, costs and disbursements it has occurred to date in defending itself in the underlying action; and

3. Burlington is obligated to reimburse the plaintiff, the Society, for the legal fees, costs and disbursements it has incurred in commencing and prosecuting the instant action since the wrongful actions of Burlington have forced plaintiff to commence this action.

Dated:   January        , 2010

_____
Gary J. O'Donnell, Esq.

LAW OFFICES OF
LAURIE G. OGDEN, ESQ.
Attorneys for Zoological Society of Buffalo
and Travelers Indemnity Company
Office and P.O. Address:
28 East Main Street, Suite 1230
Rochester, New York 14614
Telephone:  (585) 321-8140

TO:   **CARVEDROCK, LLC,**
8511 South 119th Street
Seattle, WA 98178

**BURLINGTON INSURANCE COMPANY,**
238 International Road
Burlington, North Carolina 27215

COHEN & LOMBARDO, P.C.
Daniel R. Connors, Esq.
Attorneys for Carvedrock, LLC
Office and P.O. Address:
343 Elmwood Avenue
Buffalo, New York 14222
Telephone:  (716) 881-3010

XC:   LAW OFFICE OF ROLAND M. CERCONE, PLLC
Sean P. Kelley, Esq.
Attorneys for the Plaintiffs
Office and P.O. Address:
Cornell Mansion
484 Delaware Avenue
Buffalo, New York 14202
Telephone:  (716) 883-3300

Exhibit A

*Law Offices of Laurie G. Ogd-*

*OCT 2 2 2009*



**IFG Companies®**

**COMMON POLICY DECLARATIONS**

**Policy Number**
HGL0016944

**Renewal of:**
NEW

# THE BURLINGTON INSURANCE COMPANY

Home Office: Burlington, North Carolina

Administrative Office: 100 Pearl Street, Hartford, CT 06103     Claims Office: 238 International Road, Burlington, NC 27215

---

**Item 1.** Named Insured and Mailing Address                                                    Co. Use: JKB

Carved Rock LLC

8511 S 119th St
Seattle, WA  98178

Cochrane & Company

1333 S Rustle St.
Spokane, WA 99224

Code: 0540

---

**Item 2.** Policy Period          Effective Date: 09/26/07   Expiration Date:  09/26/08
at 12:01 A.M., Standard Time at your mailing address shown above.

---

**Item 3.** In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.  This policy consists of the following coverage parts for which a premium is indicated.  Where no premium is shown, there is no coverage.

| Coverage Part(s) | Premium |
|---|---|
| Commercial General Liability | $    12,000 |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
| **Total Policy Premium or Deposit Premium** | $    12,000 |
| Other Charges (if applicable)          **Total Other Charges** | $ |
| **Total Amount Due*** | $    12,000 |

*Premium is: ___ Flat   _X_ Auditable          Policy Minimum Premium     $    12,000

In the event you cancel this policy, we will retain a minimum premium. See IFG-I-0168.

---

**Item 4.** Forms and Endorsements applicable to this policy: See "Listing of Forms and Endorsements" (IFG-I-0150)

---

**Item 5.** Form of Business.      ___ Individual           ___ Partnership          ___ Joint Venture
_X_ Limited Liability Company   ___ Other Organization, including a Corporation
___ Trust

Business Description:  Concrete Construction

---

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned:

Date: _____   By: _____

Issue Date:  10/14/2009                                              Authorized Representative

POLICY NUMBER: HGL0016944

POLICY PERIOD:       09/26/2007            09/26/2008
                     Effective Date             Expiration Date

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## LISTING OF FORMS AND ENDORSEMENTS

This listing forms a part of the following:

### Commercial General Liability Policy

**NUMBER**                **TITLE**

**Interline**

IFG-I-0101 02 04 Common Policy Declarations (TBIC)
IFG-I-0140 10 02 Schedule of Locations
IFG-I-0152 06 05 Composite Rate Endorsement
IFG-I-0402 11 00 Service of Suit Amendment
IFG-I-0168 06 05 Minimum Earned Premium
IFG-I-0169 11 05 Excl - Violation of Statutes
IL 00 03 07 02 Calculation of Premium
IL 00 17 11 98 Common Policy Conditions
IL 00 21 07 02 Nuclear Energy Liability Exclusion

**Commercial General Liability**

IFG-G-0002-DL 05 03 General Liability Declarations
CG 00 01 10 01 General Liab. Coverage Form
CG 04 42 11 03 Stop Gap Coverage - WA
CG 21 54 01 96 Exclusion - Designated Operations
CG 24 04 10 93 Waiver of Rights of Recovery
CG 25 03 03 97 General Aggregate Limit
IFG-G-0052 11 01 Deductible Liability Insurance
IFG-G-0055 06 01 Addl Insured - O,L,C
BG-G-005 07 04 Exclusion - Punitive Damages
BG-G-007 03 06 Exclusion - Asbestos, Silica
BG-G-084 06 02 Exclusion - Land Subsidence
BG-G-119 08 02 Definition - Employee
BG-G-249 05 01 Exclusion - EIFS
BG-G-345 05 05  Condo or Tract Home Exclusion
BG-G-446 02 03 Amendment - Section 1
CG 00 62 12 02  War Liability Exclusion

IFG-I-0150 03 03                                   

POLICY NUMBER: HGL0016944

POLICY PERIOD:         09/26/2007              09/26/2008
                       Effective Date          Expiration Date

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## LISTING OF FORMS AND ENDORSEMENTS

This listing forms a part of the following:

### Commercial General Liability Policy

<u>NUMBER</u>                        <u>TITLE</u>

CG 21 36 01 96 Exclusion - New Entities
CG 21 39 10 93 Contractual Liab. Limitation
CG 21 47 07 98  Employment Practices Exclusion
CG 21 49 09 99 Total Pollution Exclusion
CG 21 67 12 04 Fungi or Bacteria Exclusion
CG 21 75 12 02  Exclusion of Terrorism
GSG-G-016 02 04 Excl - Aircraft, et.al.
GSG-G-021 04 00 Excl - Intellectual Properties
IFG-G-0085 01 07 Undeclared Ops., Premises, etc.
IFG-G-0093 05 07 Exclusion - Cross Suits

<u>Cover Page</u>

IFG-I-0002 10 06 Policy Cover Page (TBIC)

IFG-I-0150 03 03                                    Page  2 of 2

| POLICY NUMBER:  HGL0016944 | EFFECTIVE DATE:  09/26/07 |
|---|---|

# SUPPLEMENTAL
# SCHEDULE OF LOCATIONS

| Loc. No. | Bldg. No. | Address | County, Borough or Parish | Rating Territory |
|---|---|---|---|---|
| 1 | 1 | 136 Stewart Rd SE,  Bldg 1, Unit A Pacific,  WA  98047 | | 002 |

Issue Date: 10/14/2009

IFG-I-0140 1002

| POLICY NUMBER: HGL0016944 | EFFECTIVE DATE: 09/26/2007 |
|---|---|

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COMPOSITE RATE ENDORSEMENT

### Schedule

| COVERAGE PART: | Commercial General Liability | | |
|---|---|---|---|
| Class<br>91560 | Description<br>Concrete Construction | | |
| Exposure Units<br>$1,800,000 | Exposure Description (Rate applies per$1,000  of Exposure Units)<br>Gross Sales | Rate<br>$6.6666<br>Prem-Ops & Prod.Co.Ops | Advance Premium<br>$12,000 |
| Class | Description | | |
| Exposure Units | Exposure Description (Rate applies per        of Exposure Units) | Rate | Advance Premium |
| Class | Description | | |
| Exposure Units | Exposure Description (Rate applies per        of Exposure Units) | Rate | Advance Premium |
| OTHER: | | | |

**A. Adjustable premium.**  The premium shown in the Schedule above is an advance premium. The exposure units shown in the Schedule are an estimate.  Upon expiration of the policy, we will compute the earned premium by applying the composite rate shown above to the actual amount of the exposure units as developed by final audit.

**B. Non-adjustable Premium.**  If any portion of the Coverage Part Premium is shown as a Flat Premium on the Declarations Page for the applicable Coverage Part, that portion of the premium is not subject to composite rate adjustment.  However, Flat Premium is part of the Total Coverage Part Premium.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT AMENDMENT

Pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, "suit" or proceeding instituted by or on behalf of the insured or any beneficiary hereunder rising out of this contract of insurance, and hereby designate the above named person as the person to whom the said officer is authorized to mail process or a true copy thereof.

It is further agreed that service of process in such "suit" may be made upon the President, or his nominee, of the Company at 238 International Road, Burlington, North Carolina 27215 and that in any "suit" instituted against any of them upon this policy, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

It is agreed that in any state requiring a standard form of policy, insurance hereunder on values or properties in such state shall attach and cover in accordance with the terms and conditions of such standard form.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

IFG-i-0402 1100

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINIMUM PREMIUM

A minimum premium is the lowest amount to be retained as premium.   Minimum premium amounts ("Minimum Premium(s)") are itemized by coverage parts ("Coverage Part(s)"), the total of which is shown as the Policy Minimum Premium.   If the policy is auditable, the amount paid as an advance or deposit premium for the applicable Coverage Part(s) equals the Minimum Premium. The policy, whether auditable or non-auditable (flat), is subject to our retaining the Minimum Premium(s) as follows:

## A.  AUDITABLE POLICIES

<u>Full Term:</u>  We will retain one hundred percent (100%) of the Minimum Premium(s) for the Coverage Part(s). In addition, the results of an audit will determine if any additional premium over the Minimum Premium(s) for the Coverage Part(s) may be due.

<u>Mid-Term Cancellations:</u>  The results of an audit will determine if any additional premium over the Minimum Premium(s) for the Coverage Part(s) may be due. If no additional premium is due, the Minimum Premium(s) for the Coverage Part(s) will be retained as follows:

1.  If the first Named Insured or anyone with his, her, its or their power of attorney, including a premium finance company, cancels this policy or a Coverage Part:

    a.  <u>Within ninety (90) days from the effective date:</u>  We will retain twenty-five percent (25%) of the Minimum Premium(s) for the Coverage Part(s).

    b.  <u>After ninety (90) days from the effective date:</u>  The Minimum Premium(s) for the Coverage Part(s) will be calculated based upon the number of days coverage was in effect.   Unless prohibited by law, your return premium will be reduced by applying a short rate penalty in the amount of ten percent (10%) to the unearned premium.

2.  If we cancel under the terms and conditions of this policy:

    a.  <u>Within ninety (90) days from the effective date:</u>  We will retain twenty-five percent (25%) of the Minimum Premium(s) for the Coverage Part(s).

    b.  <u>After ninety (90) days from the effective date:</u>  The Minimum Premium(s) for the Coverage Parts(s) will be calculated based upon the number of days coverage was in effect. The unearned premium, or your return premium, will be calculated using a pro rata method of cancellation.   Unless prohibited by law, cancellation for non-payment of premium shall be deemed cancellation by the first Named Insured and your return premium will be reduced by applying a short rate penalty in the amount of ten percent (10%) to the unearned premium.

## B.  NON-AUDITABLE POLICIES (FLAT)

<u>Full Term:</u>  We will retain one hundred percent (100%) of the Minimum Premium(s) for the Coverage Part(s).

<u>Mid-Term Cancellations:</u>  If the policy or a Coverage Part is cancelled mid-term, the Minimum Premium(s) for the Coverage Part(s) will be retained in the same manner as set forth above in Sections 1 and 2 for Mid-Term Cancellations for Auditable Policies.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

IFG-I-0168 06 05

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE LIABILITY COVERAGE PART
COMMECIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE PART
FOLLOWING FORM EXCESS LIABILITY COVERAGE PART
GARAGE LIABILITY COVERAGE PART
MOTOR CARRIER LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS AND COMPLETED OPERATIONS LIABILITY COVERAGE PART
TRUCKERS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Contains copyright material with permission,
ISO Properties, Inc., 2004

IL 00 03 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc.,  2001

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

       © ISO Properties, Inc., 2001         ☐

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001
IL 00 21 07 02

Policy Number: HGL0016944

# COMMERCIAL GENERAL LIABILITY
## DECLARATIONS

**Named Insured:** Carved Rock LLC      **Effective Date:** 09/26/2007

| Item 1. | LIMITS OF INSURANCE |
|---|---|
| $ 2,000,000 | General Aggregate Limit (Other Than Products-Completed Operations) |
| $ 2,000,000 | Products-Completed Operations Aggregate Limit |
| $ 1,000,000 | Personal and Advertising Injury Limit |
| $ 1,000,000 | Each Occurrence Limit |
| $ 50,000 | Damage To Premises Rented To You Limit (Any One Premises) |
| $ 5,000 | Medical Expense Limit (Any One Person) |

Refer to individual policy forms and/or endorsements for various coverage sublimits, if applicable.

| Item 2. | AUDIT PERIOD (If Applicable) |
|---|---|

[X] Annually    [ ] Semi-Annually    [ ] Quarterly    [ ] Monthly

| Item 3. | FORM(S) AND ENDORSEMENT(S) made a part of this policy at time of issue: |
|---|---|

See Listing of Forms and Endorsements (IFG-I-0150)

| Item 4. | COMPOSITE RATE |
|---|---|

[X] If box is checked, see Composite Rate Endorsement (IFG-I-0152) for applicable classification, rates and premiums. If box is not checked, see page 2 of these Declarations for applicable classifications, rates and premiums.

| Item 5. | RETROACTIVE DATE (CG 00 02 only) |
|---|---|

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: None    (Enter Date or "None" if no Retroactive Date applies.)

| Item. 6 | PREMIUMS |
|---|---|
| $ 12,000 | Total Coverage Part Advance Premium |
| $ 12,000 | Coverage Part Minimum Premium (if applicable) |

These Declarations are part of the Policy Declarations containing the name of the insured and the policy period.

IFG-G-0002-DL 0503

**Policy Number:** HGL0016944

# COMMERCIAL GENERAL LIABILITY
# SCHEDULE OF CLASSIFICATIONS AND RATES

**Named Insured:** Carved Rock LLC | **Effective Date:** 09/26/2007

| Loc. No.<br><br>Bldg. No. | Location Address  (Premises you own, rent or occupy): | County, Borough or Parish | Rating Terr. |
|---|---|---|---|

| Code No.<br>42009 | Classification<br>CG 04 42 11 03 Stop Gap Coverage - WA |
|---|---|

| Premium is:<br>[X] Adjustable (See Premium Audit Conditions)<br>[ ] Flat  (Not Adjustable)<br>[ ] Fully Earned When Written<br>[X] Minimum Premium | Premium Base | | All Other | Prod.-C. Ops |
|---|---|---|---|---|
| | | Rate Per: N/A | | |
| | | Advance Premium: | Included | |

| Loc. No.<br><br>Bldg. No. | Location Address  (Premises you own, rent or occupy): | County, Borough or Parish | Rating Terr. |
|---|---|---|---|

| Code No.<br>42025 | Classification<br>CG 24 04 10 93 Waiver of Rights of Recovery |
|---|---|

| Premium is:<br>[ ] Adjustable (See Premium Audit Conditions)<br>[X] Flat  (Not Adjustable)<br>[X] Fully Earned When Written<br>[X] Minimum Premium | Premium Base | | All Other | Prod.-C. Ops |
|---|---|---|---|---|
| | | Rate Per: N/A | | |
| | | Advance Premium: | See Composite Rate | |

| Loc. No.<br><br>Bldg. No. | Location Address  (Premises you own, rent or occupy): | County, Borough or Parish | Rating Terr. |
|---|---|---|---|

| Code No.<br>44444 | Classification<br>CG 25 03 03 97 General Aggregate Limit |
|---|---|

| Premium is:<br>[ ] Adjustable (See Premium Audit Conditions)<br>[X] Flat  (Not Adjustable)<br>[ ] Fully Earned When Written<br>[X] Minimum Premium | Premium Base | | All Other | Prod.-C. Ops |
|---|---|---|---|---|
| | | Rate Per: N/A | | |
| | | Advance Premium: | Included | |

IFG-G-0002-DL 0503

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2000

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000
CG 00 01 10 01

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for, any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

© ISO Properties, Inc., 2000

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned by or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

             © ISO Properties, Inc., 2000             CG 00 01 10 01

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** , – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

© ISO Properties, Inc., 2000

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

© ISO Properties, Inc., 2000
CG 00 01 10 01

# SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

CG 00 01 10 01 © ISO Properties, Inc., 2000

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2000    CG 00 01 10 01

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in **a.** above;

      (2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

   © ISO Properties, Inc., 2000   CG 00 01 10 01

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

© ISO Properties, Inc., 2000

**b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

   **(1)** Work or operations performed by you or on your behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc.,  2000

CG 00 01 10 01

POLICY NUMBER: HGL0016944

**COMMERCIAL GENERAL LIABILITY**
**CG 04 42 11 03**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT – WASHINGTON

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

| Limits Of Insurance | | | |
|---|---|---|---|
| Bodily Injury By Accident | $ | 1,000,000 | Each Accident |
| Bodily Injury By Disease | $ | 1,000,000 | Aggregate Limit |
| Bodily Injury By Disease | $ | 1,000,000 | Each Employee |
| | | | |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – STOP GAP – EMPLOYERS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated by Washington Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance;** and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

**(1)** The:

**(a)** "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

**(b)** "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

**(c)** "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of Washington; and

**(2)** The:

**(a)** "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

© ISO Properties, Inc., 2003

(b) "Bodily injury by disease" is caused by or aggravated by conditions of employment by you and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

c. The damages we will pay, where recovery is permitted by law, include damages:

(1) For:

(a) Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

(b) Care and loss of services; and

(c) Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

(2) Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## 2. Exclusions

This insurance does not apply to:

a. **Intentional Injury**

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

b. **Fines Or Penalties**

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

c. **Statutory Obligations**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

d. **Contractual Liability**

Liability assumed by you under any contract or agreement.

e. **Violation Of Law**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

f. **Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

g. **Failure To Comply With "Workers Compensation Law"**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

(1) Deprived of common law defenses; or

(2) Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law".

h. **Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

(1) Knowingly employed by you in violation of any law as to age; or

(2) Under the age of 14 years, regardless of any such law.

i. **Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

(1) The Federal Employer's Liability Act (45 USC Section 51-60);

(2) The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

© ISO Properties, Inc.,  2003   CG 04 42 11 03

(3) The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

(4) The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

(5) The Defense Base Act (42 USC Sections 1651-1654);

(6) The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

(7) The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

(8) Any other workers compensation, unemployment compensation or disability laws or any similar law; or

(9) Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

B. The **Supplementary Payments** provisions apply to Coverage – Stop Gap Employers Liability as well as to Coverages **A** and **B.**

C. For the purposes of this endorsement, **Section II – Who Is An Insured,** is replaced by the following:

If you are designated in the Declarations as:

1. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

3. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

D. For the purposes of this endorsement, **Section III – Limits Of Insurance,** is replaced by the following:

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The "Bodily Injury By Accident" – Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

3. The "Bodily Injury By Disease" – Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

4. Subject to Paragraph **D.3.** of this endorsement, the "Bodily Injury By Disease" – Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

© ISO Properties, Inc., 2003

E. For the purposes of this endorsement, Condition **2. – Duties In The Event Of Occurrence, Claim Or Suit** of the Conditions Section IV is deleted and replaced by the following:

2. **Duties In The Event Of Injury, Claim Or Suit**

   a. You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

      (5) Do nothing after an injury occurs that would interfere with our right to recover from others.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

F. For the purposes of this endorsement, Paragraph **4.** of the **Definitions** Section is replaced by the following:

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in **a.** above, but who is away for a short time on your business;

   provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

G. The following are added to the **Definitions** Section:

1. "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

2. "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

3. "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

H. For the purposes of this endorsement, the definition of "bodily injury" does not apply.

     © ISO Properties, Inc., 2003     **CG 04 42 11 03**     □

POLICY NUMBER: HGL0016944

COMMERCIAL GENERAL LIABILITY
CG 21 54 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Description and Location of Operation(s):**
All locations where you perform or have performed work that is or was to be insured under a consolidated (wrap-up) insurance program as described below.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

Copyright, Insurance Services Office, Inc., 1994

POLICY NUMBER: HGL0016944

COMMERCIAL GENERAL LIABILITY
CG 24 04 10 93

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**   Any person or organization with whom you have agreed, in a written contract to waive the transfer of rights of recovery against others to us, provided such written waiver is fully executed prior to an "occurrence" in which coverage is sought under this policy.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

POLICY NUMBER: HGL0016944

**COMMERCIAL GENERAL LIABILITY**
CG 25 03 03 97

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Designated Construction Projects:
Each construction project described in a separate written contract. If multiple construction projects are grouped together under one written contract, all such projects will be considered one project and subject to a single general aggregate limit for that contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

CG 25 03 03 97

Copyright, Insurance Services Office, Inc.,  1996

1. Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Limits Of Insurance (SECTION **III**) not otherwise modified by this endorsement shall continue to apply as stipulated.

Copyright, Insurance Services Office, Inc., 1996

CG 25 03 03 97

POLICY NUMBER: HGL0016944

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE
### DEDUCTIBLE APPLIES TO DAMAGES, DEFENSE COSTS AND SUPPLEMENTARY PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | | |
| --- | --- | --- | --- |
| | PER CLAIM | or | PER OCCURRENCE OR OFFENSE |
| Bodily Injury Liability | $ | | $ |
| OR | | | |
| Property Damage Liability | $ | | $ |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | | $ |
| OR | | | |
| Personal and Advertising Injury Liability | $ | | $ |
| OR | | | |
| Bodily Injury Liability, Property Damage Liability and/or Personal and Advertising Injury Liability Combined | $ 2,500 | | $ |
| Aggregate Deductible amount: | $ | | |
| | (No aggregate deductible applies if left blank.) | | |

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all applicable coverages, however caused):

A. Our obligation under the Bodily Injury Liability, Property Damage Liability and Personal and Advertising Injury Liability Coverages to pay:

1. Damages on your behalf;

2. Defense Costs; and

3. Supplementary Payments

applies only to the amount in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

Our obligation to pay applies only to the difference between the deductible amounts shown above (less any amounts paid for Defense Costs or Supplementary Payments within the deductible amount, if applicable), and the limits of insurance stated in the policy.

B. You may select a deductible amount on either a per claim or a per "occurrence" or offense basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. Subject to paragraph D. below, the deductible amount stated in the Schedule above applies as follows:

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury"; and, all Defense Costs or Supplementary Payments incurred by the company as a result

Contains copyright material with permission, Insurance Services Office, Inc. 1994

a. of a claim brought by any one person because of "bodily injury".

b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; and, all Defense Costs or Supplementary Payments incurred by the company as a result of a claim brought by any one person because of "property damage".

c. Under Personal and Advertising Injury Liability Coverage, to all damages sustained by any one person or organization because of "personal and advertising injury"; and, all Defense Costs or Supplementary Payments incurred by the company as a result of a claim brought by any one person because of "personal and advertising injury".

d. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person, and Defense Costs or Supplementary Payments incurred by the company as a result of a claim brought by any one person because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Bodily injury" and "property damage" combined

e. Under Bodily Injury Liability, Property Damage Liability and/or Personal and Advertising Injury Liability Coverage Combined, to all damages sustained by any one person, and Defense Costs or Supplementary Payments incurred by the company as a result of a claim brought by any one person because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Personal and Advertising Injury";

(4) "Bodily injury", "property damage" and "personal and advertising injury" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any one

time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage" and "personal and advertising injury", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury"; and, all Defense Costs or Supplementary Payments incurred by the company as a result of "bodily injury".

b. Under Property Damage Liability Coverage, to all damages because of "property damage"; and, all Defense Costs or Supplementary Payments incurred by the company as a result of "property damage".

c. Under Personal and Advertising Injury Liability Coverage, to all damages because of "personal and advertising injury"; and, all Defense Costs or Supplementary Payments incurred by the company as a result of "personal and advertising injury".

d. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages, and Defense Costs or Supplementary Payments incurred by the company because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Bodily injury" and "property damage" combined

e. Under Bodily Injury Liability, Property Damage Liability and/or Personal and Advertising Injury Liability Coverage Combined, to all damages, and Defense Costs or Supplementary Payments incurred by the company because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Personal and Advertising Injury";

Contains copyright material with permission, Insurance Services Office, Inc. 1994

(4)    "Bodily injury", "property damage" and "personal and advertising injury" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C.  The Deductible amount applies to damages, Defense Costs and Supplementary Payments combined for any one Occurrence, Offense or Claim (whichever applies per paragraph **B.** above).   The Deductible will be applied first to the payment of damages and then to the payment of Defense Costs and Supplementary Payments.

D.  If an Aggregate Deductible amount is shown in the Schedule above, the total deductible amount you must pay during the policy period shall not exceed the amount of the Aggregate Deductible shown.

E.  The terms of this insurance, including those with respect to:

1.  Our right and duty to defend the insured against any "suits" seeking those damages,

2.  Your duties in the event of an "occurrence", claim, or "suit" apply irrespective of the application of the deductible amount.

F.  We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

G.  **DEFENSE   COSTS   DEFINITION   –   COVERAGES A AND B.**

For the purposes of this endorsement, Defense Costs includes attorney fees, court costs, interest and all other costs incurred by the company in the handling, investigation, and adjustment of claims or "suits" against the insured, even when no payment is made to the claimant, or when this insurance does not apply.

Contains copyright material with permission, Insurance Services Office, Inc. 1994

POLICY NUMBER: HGL0016944

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## Schedule

**Name of Person or Organization:**
Any person or organization with whom you have agreed, in a written contract, that such person or organization should be added as an additional insured on your policy, provided such written contract is fully executed prior to an "occurrence" in which coverage is sought under this policy.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

It is agreed that such insurance as is afforded by this policy for the benefit of the Additional Insured shall be primary insurance, and any other insurance maintained by the Additional Insured shall be excess and non-contributory, but only as respects any claim, loss or liability arising out of the operations of the Named Insured, and only if such claim, loss or liability is determined to be solely due to the negligence or responsibility of the Named Insured.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

This insurance does not apply to any claim of or indemnification for punitive or exemplary damages.  If a "suit" seeking both compensatory and punitive or exemplary damages has been brought against you for a claim covered by this policy, we will provide defense for such action.  We will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

BG-G-005 0704

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS, SILICA OR OTHER TOXIC SUBSTANCES

This endorsement modifies insurance under the following:

> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
> **COMMERCIAL LIABILITY UMBRELLA COVERAGE**
> **FOLLOWING FORM EXCESS LIABILITY COVERAGE**
> **OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
> **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" caused, in any manner, by asbestos, silica, asbestos dust or silica dust or any other similar fibrous or mineral substance in any form, whether or not it is incorporated into "your product" or "your work."

This insurance does not apply to any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat or in any way respond to, or assess the existence or effects of any such substance.

BG-G-007 03 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – LAND SUBSIDENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" claims caused by, resulting from, attributable or contributed to, or aggravated by the subsidence of land as a result of earthquake, landslide, mudflow, earth sinking, earth rising, or earth shifting.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEFINITION - EMPLOYEE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Definition 5. "Employee" (SECTION V) is replaced by the following:

5. "Employee" means a person working for salary or wages, or any substitute for salary or wages, as compensation in any manner by any insured, under any contract of hire, express or implied, oral or written, where the insured, as employer, has the power or right to control and direct the employee. "Employee" includes a person hired by the hour, day or any other irregular or intermittent period. "Employee" includes a "leased worker" or "temporary worker".

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – PRODUCTS-COMPLETED OPERATIONS
## EXTERIOR INSULATION AND FINISH SYSTEMS (EIFS)

This endorsement modifies such insurance provided under the following:

COMMERCIAL GENERAL LIABILITY PART

The following is added to Paragraph **2., Exclusions** of **Coverage A – Bodily Injury and Property Damage Liability (Section I – Coverages)** and **Coverage B – Personal And Advertising Injury Liability (Section I – Coverages):**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" within the "products-completed operations hazard" arising out of building construction, maintenance or repairs using products, techniques or operations commonly known as "Exterior Insulation and Finish Systems" (EIFS).

Additional Definition:

"Exterior Insulation and Finish Systems" (EIFS) are non-load bearing exterior wall systems with four primary components. In order of appearance, the four primary EIFS components from the substrate to the outside of the building are:

    a.  panels of expanded polystyrene foam insulation adhesively or mechanically fastened to the substrate;

    b.  a base coat that is troweled over the foam insulation panels;

    c.  a glass fiber reinforcing mesh that is laid over the polystyrene insulation panels and fully embedded in the base coat; and

    d.  a finish coat that is troweled over the base coat and the reinforcing mesh.

EIFS is not stucco. Stucco is a plaster made of Portland cement and other materials, usually troweled onto a masonry surface or metal lath. Most EIFS finish coats contain no cement at all and there is usually no lath or masonry wall.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CONDOMINIUM, TOWNHOUSE, ROW HOUSE, OR TRACT HOME CONSTRUCTION PROJECTS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL LIABILITY UMBRELLA COVERAGE**
**FOLLOWING FORM EXCESS LIABILITY COVERAGE**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

This policy does not apply to, nor shall the Company have any duty to defend any claim or "suit" seeking damages for, "bodily injury," "property damage" or "personal and advertising injury" arising from, or related to or in any way connected with "your work" or "your product" within the "products – completed operations hazard" when such work or products are part of or incorporated into a "condominium project," "townhouse project," "row house project," or "tract home project."

This endorsement does not apply if "your work" occurs or "your products" are supplied or incorporated after such residential structure was certified for occupancy except for such work if performed to repair or replace "your work" or "your product" that was completed or incorporated prior to the certificate of occupancy.

These definitions are added:

"Condominium project" is a system of separate ownership of individual units in a multiple-unit building.  A single real property parcel with all the unit owners having a right in common to use the common elements with separate ownership confined to the individual units which are serially designated.

"Row house project" is a series of houses connected by common sidewalls and forming a continuous group.

"Town house project" is a group of dwelling units normally having two, but sometimes three, stories; each unit usually connected to a similar structure by a common wall, and commonly (particularly in planned unit developments) sharing and owning in common the surrounding grounds.

"Tract home project" is a large piece or parcel of land subdivided into ten or more lots, tracts, parcels or other divisions of land for the development and sale of freestanding one, two, three or four family dwellings.

These exclusions and definitions apply in addition to those contained in the Coverage Form.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT – SECTION I INSURING AGREEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Paragraph **1. Insuring Agreement, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** of **SECTION I – COVERAGES** is replaced in its entirety with the following:

**1.  Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**, or have tendered the applicable limit of insurance for payment of such judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

(3) The "bodily injury" and "property damage, whether known or unknown to any person:

(a) Did not first occur prior to the inception date of the policy;

(b) Was not in the process of occurring and is not alleged to have been in the process of occurring, as of the inception date of the policy; and

(c) Was not in the process of settlement, adjustment, "suit" or other proceeding of any kind (including, but not limited to, any repair attempts or any statutorily mandated loss resolution or pre-suit process) as of the inception date of the policy.

c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused,  arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection,  rebellion,  revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

a. War, including undeclared or civil war; or

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply.  Medical payments due to war are now subject to Exclusion **g.** of  Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

© ISO Properties, Inc.,  2002

**COMMERCIAL GENERAL LIABILITY**
**CG 21 36 01 96**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **4.** of WHO IS AN INSURED (Section II) does not apply.

 Copyright, Insurance Services Office, Inc., 1994

**COMMERCIAL GENERAL LIABILITY**
**CG 21 39 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINI-TIONS Section is replaced by the following:

"Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement.

    Copyright, Insurance Services Office, Inc., 1992       □

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 07 98**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

☐

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of,  "pollutants".

 Copyright, Insurance Services Office, Inc., 1998   ☐

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 75 12 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   a. The act resulted in aggregate losses in excess of $5 million; and

          © ISO Properties, Inc., 2002            □

**b.** The act is a violent act or an act that is dangerous to human life, property or infra--structure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

© ISO Properties, Inc., 2002
CG 21 75 12 02   □

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – AIRCRAFT PRODUCTS AND GROUNDING**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard" and arising out of any "aircraft product" or the "grounding" of any aircraft.

As respects this endorsement, the following definitions are added:

**"Aircraft product"** means:

1. Aircraft (including missile or spacecraft, and any ground support or control equipment used therewith); and

2. Any article furnished by the insured and installed in an aircraft or used in connection with an aircraft, or for spare parts for an aircraft, including ground handling tools and equipment; and

3. Any of "your products" used at an airport for the purpose of guidance, navigation or direction of aircraft; and

4. Training aids, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft, articles or products.

**"Grounding"** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part therefore sold, handled or distributed by the insured or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders, or drawings of the insured or with tools, machinery or other equipment furnished to such persons or organizations by the insured, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

GSG-G-016 0204

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - INTELLECTUAL PROPERTY

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to injury or damage that results from the actual or alleged infringement, or violation of any intellectual property rights or laws, including but not limited to:

1.      Copyright;

2.      Patent;

3.      Trade dress;

4.      Trade name;

5.      Trade secret; or

6.      Trademark

GSG-G-021 0400                                                                                   Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNDECLARED OPERATIONS, PREMISES, OR LOCATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to **2. Exclusions,** of **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** of **SECTION I – COVERAGES,** and **2. Exclusions,** of **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** of **SECTION I - COVERAGES:**

**Undeclared Operations, Premises or Locations**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**a.** Premises or locations owned, leased or rented by the insured that are not scheduled in the policy; or

**b.** Operations or "products-completed operations hazard" not included in the Classification schedule in the policy, whether or not such operations or "products-completed operations hazard" are continuous, intermittent, incidental, temporary or seasonal in nature.

IFG-G-0085 01 07

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EXCLUSION – CROSS SUITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any claim for damages by any **Named Insured** against another **Named Insured** because of "bodily injury", "property damage", "personal and advertising injury" or "injury".

"**Named Insured**" means any party listed as a Named Insured on the Common Declaration Page of the policy and any party qualifying as an "insured" under Section II – Who Is An Insured, but excluding any party qualifying as such under any Additional Insured endorsement.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

IFG-G-0093 05 07

# INSURANCE POLICY
of
# The Burlington Insurance Company

A Stock Company

Home Office and Claim Office:
238 International Road
Burlington, North Carolina 27215
Tel. 336-586-2500 or
Toll Free 1-877-434-2667



**IFG Companies®**

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representatives.

_____
Secretary

_____
President

**IFG-I-0002 10 06**

POLICY NUMBER: HGL0016944                 ENDORSEMENT # : 1

NAMED INSURED: Carved Rock LLC            EFFECTIVE DATE:   09/26/2007

INSURANCE COMPANY: The Burlington Insurance Company

PRODUCER: Cochrane & Company - 0540
                  1333 S Rustle St.
                  Spokane, WA 99224

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### GENERAL CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

Commercial General Liability Policy

The Mailing Address and Loc. No. 1 on IFG-I-0140 10 02, Supplemental Schedule of Locations, are amended to read:

5812 S. Adams Street, Suite B, Tacoma, WA 98409

**Premium for this Change Endorsement:**

| $ 0.00 | No Change in Premium |
|--------|----------------------|

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

POLICY NUMBER: HGL0016944

NAMED INSURED: Carved Rock LLC

ENDORSEMENT # : 2

EFFECTIVE DATE:   09/26/2007

INSURANCE COMPANY: The Burlington Insurance Company

PRODUCER:  Cochrane & Company - 0540
1333 S Rustle St.
Spokane, WA 99224

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### GENERAL CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

Commercial General Liability Policy

CG 21 34 01 87, Exclusion - Designated Work, is added.

Premium for this Change Endorsement:

| $ 0.00 | No Change in Premium |
| --- | --- |

## ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

IFG-I-0151 01 05                           Certified                Issue Date:   10/14/2009 SDB

POLICY NUMBER: HGL0016944                                    **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of your work:**

All operations in the state of Nevada

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

Exhibit B

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

DAVID OLDREAD AND LAURA L. OLDREAD
447 University Avenue
Tonawanda, New York 14223

                Plaintiffs,          **SUMMONS**

vs

                              Index No:

CARVEDROCK, LLC
8511 South 119th Street
Seattle, Washington 98178   and
ZOOLOGICAL SOCIETY OF BUFFALO, INC.
300 Parkside Avenue
Buffalo, New York 14214

                Defendants.

---

**TO THE ABOVE NAMED DEFENDANTS:**

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with a summons, to serve a notice of appearance, on the plaintiffs' attorney (s) within 20 days after the service of this summons, exclusive of the day of service, or within 30days after completion of service where service is made in any other manner than by personal delivery within the State. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    **COMPLAINT ENDORSEMENT:** That plaintiffs' complaint against you is in a sum beyond the jurisdictional limits of all lower Courts, together with interest costs and disbursements in this action based on a cause of action for personal injuries.

    Erie County is designated as the place of trial on basis of resident of plaintiff(s) who resides at County of Erie, New York.

DATED:    Buffalo, New York
             April 21, 2009

                          ROLAND M. CERCONE, PLLC.

                          By:
                          Roland M. Cercone, Esq.
                          *Attorney for Plaintiff*
                          484 Delaware Avenue
                          Buffalo, New York 14202
                          (716) 883-3300

FILED
04/23/2009   15:46:13
ERIE COUNTY CLERK
RCPT # 4 700520
I 2009004772

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

---

DAVID J. OLDREAD and LAURA L. OLDREAD
447 University Avenue
Tonawanda, New York 14223

                                    Plaintiffs,        VERIFIED COMPLAINT

-vs-
                                                       Index No:

CARVEDROCK, LLC
8511 South 119th Street
Seattle, Washington 98178

ZOOLOGICAL SOCIETY OF BUFFALO, INC.
300 Parkside Avenue
Buffalo, New York 14214

                                    Defendants.

*FILED*
*ACTIONS & PROCEEDINGS*
*APR 23 2009*
*ERIE COUNTY*
*CLERK'S OFFICE*

---

Plaintiffs above named for their verified cause of action against the defendants

herein, allege upon information and/or knowledge and/or belief:

1.      At all times hereinafter mentioned, the plaintiffs were at the time of this

incident and are at the present time residents of the County of Erie and State of New

York.

2,      That upon information and belief, the defendant, CARVEDROCK, LLC,

is a business incorporated under the Laws of the State of Washington and with

headquarters at 8511 South 119th Street, Seattle, Washington.

3.      That upon information and belief, the defendant, CARVEDROCK, LLC,

was authorized to do business and does business in the State of New York.

4.  .   That upon information and belief, the defendant, ZOOLOGICAL

SOCIETY OF BUFFALO, INC. is a domestic corporation organized and operating under

the Laws of New York State with a principle place of business in the City of Buffalo, County of Erie and State of New York.

5.　　That on the date of this accident, April 16th, 2008, the defendants were doing business in the County of Erie, State of New York.

6.　　That at all times relevant to this Complaint, the plaintiff was performing work as a laborer.

7.　　That at all times relevant to this Complaint, the defendants owned a non-delegable duty to the plaintiff to provide safety devices for his proper protection while performing work on the construction site.

8.　　At all times relevant to this Complaint, the defendants owned a non-delegable duty to the plaintiff in accordance with N.Y. State Labor Law and the Industrial Code.

9.　　That on or about April 16th, 2008, the plaintiff, DAVID OLDREAD, was forced to fall from scaffolding due to the negligence and carelessness of the defendants, their agents, employees, and/or representatives either jointly or severely.

10.　　That at all times mentioned, the plaintiff was using due care.

### AS AND FOR A FIRST CAUSE OF ACTION

11.　　The plaintiffs repeat, restate and reiterate each and every allegation set forth above with full force and effect herein.

12.　　That the plaintiff, DAVID OLDREAD'S injuries were causally related to the negligence, recklessness and carelessness of the defendants, their agents, employees, and/or representatives, either jointly and/or severally.

13.    That as a result of the premises, the plaintiff, DAVID OLDREAD, suffered serious injury and was caused to expend large sums of money for medical bills, has incurred lost wages, pain and suffering, loss of household services and will be forced to incur these expenses in the future all to his damages in an amount exceeding the jurisdictional limits of all lower New York State Courts.

14.    That as a result of the premises, the plaintiff, LAURA OLDREAD, has had significantly affected the society, support, services and consortium of her husband in a derivative manner all to her damages in an amount exceeding the jurisdictional limits of all lower New York State Courts.

## AS AND FOR A SECOND CAUSE OF ACTION

15.    The plaintiffs, repeat, restate and reiterate each and every allegation set forth above with full force and affect herein.

16.    That as a result of defendant, CARVEDROCK, LLC, being a non-employer and contractor and having caused the plaintiff, DAVID OLDREAD, to fall on a job site and causing injury to plaintiff, plaintiff seeks liability against this defendant under Sections 200, 240 and/or 241 of the New York State Labor Law and the New York State Industrial Code, including but not limited to Section 23.

17.    That as a result of the premises, the plaintiff, DAVID OLDREAD, suffered serious injury and was caused to expend large sums of money for medical bills, has incurred lost wages, pain and suffering, loss of household services and will be forced to incur these expenses in the future, all to his damages in an amount exceeding the jurisdictional limits of all lower Courts.

18.     That as a result of the premises, the plaintiff, LAURA OLDREAD, has had significantly affected the society, support, services and consortium of her husband in a derivative manner, all to her damages in an amount exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A THIRD CAUSE OF ACTION

19.     The plaintiffs, repeat, restate and reiterate each and every allegation set forth above with full force and affect herein.

20.     That as a result of defendant ZOOLOGICAL SOCIETY OF BUFFALO, INC., being a non-employer and owner of property on which the plaintiff, DAVID OLDREAD was caused to fall on a job site and causing injury to plaintiff, plaintiff seeks liability against this defendant under Sections 200, 240 and/or 241 of the New York State Labor Law and the New York State Industrial Code, including but not limited to Section

21.     That as a result of the premises, the plaintiff, DAVID OLDREAD, suffered serious injury and was caused to expend large sums of money for medical bills, has incurred lost wages, pain and suffering, loss of household services and will be forced to incur these expenses in the future, all to his damage in an amount exceeding the jurisdictional limits of all lower Courts.

22.     That as a result of the premises, the plaintiff, LAURA OLDREAD, has had significantly affected the society, support, services and consortium of her husband in a derivative manner, all to her damages in an amount exceeding the jurisdictional limits of all lower Courts.

WHEREFORE, plaintiffs demand judgment against the defendants, in a sum beyond the jurisdictional limits of all lower Courts, together with interest, costs and disbursements and attorneys' fees in this manner.

DATED:       Buffalo, New York

LAW OFFICE OF ROLAND CERCONE, PLLC

By:
Roland M, Cercone, Esq.
Attorneys for Plaintiffs
Cornell Mansion
484 Delaware Avenue
Buffalo, New York 14202
(716) 883-3300

Exhibit C

STATE OF NEW YORK
SUPREME COURT  :  COUNTY OF ERIE

---

DAVID J. OLDREAD & LAURA L. OLDREAD

Plaintiffs

     vs.

                                             **ANSWER**
                                             Index No: 2009-4772

CARVEDROCK, LLC and
ZOOLOGICAL SOCIETY OF BUFFALO, INC.

Defendants

---

The, defendant, CARVEDROCK, LLC by and through its attorneys, COHEN & LOMBARDO, P.C., as and for its answer to the plaintiffs' complaint alleges:

1.    DENIES the allegations contained in paragraphs "10", "12', "13", "14", "16", "17","18", "21", and "22" of the plaintiffs' complaint

2.    DENIES that this answering defendant have knowledge or information sufficient to form a belief as to the allegations contained in paragraphs "1", "2", "3", "4", "5", "6", "7", "8", "9", and "20" of the plaintiffs' complaint.

3.    Answering paragraphs "11", "15", and "19" of the plaintiffs' complaint, this answering defendant repeats each and every admission or denial of the allegations contained in the foregoing paragraphs  referred to therein, with same force and effect as though fully set forth herein.

4.    That this answering defendant DENY each and every allegation herein not heretofore admitted or controverted.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE,
THIS ANSWERING DEFENDANT ALLEGES:**

5.    That this answering defendant is not subject to the jurisdiction of this

Court as it was never properly served.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE,
## THIS ANSWERING DEFENDANT ALLEGES:

6.    This action is barred by the applicable Statute of Limitations.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE,
## THIS ANSWERING DEFENDANT ALLEGES:

7.    That whatever injuries the plaintiff may have sustained as alleged in the complaint herein were proximately caused, in whole or in part, by the culpable conduct, including comparative negligence and assumption of risk, of the plaintiff.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE,
## THIS ANSWERING DEFENDANT ALLEGES:

8.    That any injuries and damages sustained by the plaintiff were caused solely and wholly by reason of the plaintiff's carelessness and negligence, or by the carelessness and negligence of some third person or persons not under the control of the defendant, in that the plaintiff did not take the usual, necessary and proper precautions for his own safety, and plaintiff was otherwise negligent and careless in the premises.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE,
## THIS ANSWERING DEFENDANT ALLEGES:

9.    That the sole and exclusive remedy available to the plaintiff as against this answering defendant is and was pursuant to the terms of the Worker's Compensation Law of the State of New York, and this action is therefore barred.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE,
## THIS ANSWERING DEFENDANT ALLEGES:

10.    That this answering defendant denies any responsibility on its part, but if such liability is established, then such liability will be insufficient to impose liability upon this answering defendant for more than its proportionate share.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE,
### THIS ANSWERING DEFENDANT ALLEGES:

11.   That the culpable conduct of the plaintiff, if not the sole cause of the damages sustained in the accident alleged in the complaint, contributed thereto, and any damages otherwise recoverable in this action shall be diminished in the proportion which the culpable conduct attributable to the plaintiff bears to the culpable conduct which caused such damages.

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE,
### THIS ANSWERING DEFENDANT ALLEGES:

12.   Should plaintiff be entitled to recover for damages that have been alleged in his complaint, any such recovery must be reduced to the extent that plaintiff failed to mitigate, minimize, or avoid the alleged damages.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE,
### THIS ANSWERING DEFENDANT ALLEGES:

13.   In the event that the plaintiff recovers damages which have been paid and are payable by a collateral source, this answering defendant will seek to offset such damages pursuant to Article 45 of the CPLR.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE,
### AND BY WAY OF A CROSSCLAIM AGAINST THE CODEFENDANT,
### ZOOLOGICAL SOCIETY OF BUFFALO, INC.,
### THIS ANSWERING DEFENDANT ALLEGES:

14.   That if the plaintiff sustained injury and damage as alleged in the complaint by reason of fault other than his own, and judgment is recovered against this answering defendant, then the liability of said defendant will have been brought about by reason of the primary culpable conduct of the codefendant, Zoological Society of Buffalo, Inc., without any such culpable conduct on the part of this answering defendant

who is thereby entitled to indemnity for all or part of any such judgment and in such amount as shall be determined ultimately at the trial of this action.

## AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE, THIS ANSWERING DEFENDANT ALLEGES:

15.    In the event that plaintiff proves a hazardous condition, substance, or defect existed, which is specifically denied, the complaint and causes of action on behalf of the plaintiff is barred as defendant had no prior actual or constructive notice of the alleged condition, substance or defect.

**WHEREFORE,** defendant, CarvedRock, LLC, demands judgment: (1) dismissing the plaintiffs' complaint; (2) in the event that the plaintiffs are entitled to recover, that the plaintiffs' damages be diminished in the proportion which the culpable conduct and contributory negligence attributable to plaintiffs bears to the culpable conduct and negligence which caused such damages; (3) in the event that the plaintiffs are entitled to recover, that the plaintiffs' damages be diminished to the extent they failed to mitigate, minimize, or avoid such damages; and (4) further demands judgment against co-defendant, Zoological Society of Buffalo, Inc., for the full amount of any judgment rendered herein in favor of the plaintiffs and against this answering defendant, or for such proportionate share of any such judgment as represents the amount, degree or kind of culpable conduct attributable to co-defendant, Zoological Society of Buffalo, Inc., together with the costs and disbursements of this action, and any other and additional relief as to the Court may seem just and proper.

DATED:    BUFFALO, NEW YORK
          June 24, 2009

                                    COHEN & LOMBARDO, P.C.

                                    By: _____
                                    Daniel R. Connors, Esq.
                                    Attorneys for Defendant
                                    CarvedRock, LLC
                                    Office and P.O. Address
                                    343 Elmwood Avenue
                                    Buffalo, New York 14222
                                    Telephone: (716)881-3010

TO:    Roland M. Cercone, Esq.
       Attorneys for Plaintiffs
       Office and P.O. Address
       ROLAND M. CERCONE, PLLC
       484 Delaware Avenue
       Buffalo, New York 14202
       Telephone: (716) 883-3300

CC.    Counsel for Zoological Society of Buffalo, Inc.

D7528{3601-40}
DRC:jjb

STATE OF NEW YORK
SUPREME COURT   :   COUNTY OF ERIE

---

DAVID J. OLDREAD & LAURA L. OLDREAD

Plaintiffs

vs.

CARVEDROCK, LLC and
ZOOLOGICAL SOCIETY OF BUFFALO, INC.

Defendants

**AFFIDAVIT OF SERVICE
BY MAIL**
Index No: 2009-4772

---

STATE OF NEW YORK     }
CITY OF BUFFALO }  ss.:
COUNTY OF ERIE        }

SUSAN B. BERMEL, being duly sworn, deposes and says:

Deponent is not a party to this action, is over 18 years of age, and resides at Buffalo, New York.

On June 30, 2009, deponent served the within Answer on Roland M. Cercone, Esq., Attorneys for Plaintiffs, David J. Oldread and Laura L. Oldread in this matter, at the Law Office of Roland Cercone, PLLC, Cornell Mansion, 484 Delaware Avenue, Buffalo, New York 14202, the address designated by said attorney for that purpose by depositing a true copy of same enclosed in a post-paid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_____
SUSAN B. BERMEL

STATE OF NEW YORK     :
COUNTY OF ERIE        : ss.:

On the 30th day of June in the year 2009 before me, the undersigned, a notary public in and for said state, personally appeared SUSAN B. BERMEL, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

**JULIE J. BEYER**
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 17, 2010


**TRAVELERS**

*Joseph D. Bianchi*
*Sr. Technical Specialist*
*Travelers*
*(585) 321-8325*
*(866) 228-7729 fax*

*PO Box 22986*
*Rochester, NY 14692*

April 25, 2008

Carved Rock LLC
5812 S. Adams St. Ste B
Tacoma, WA 98409

Burlington Insurance Company
238 International Road
Burlington, NC 27215

## DEMAND FOR DEFENSE AND INDEMNIFICATION

To Whom It May Concern::

| | | |
|---|---|---|
| RE: | POLICYHOLDER | : MANNING SQUIRES HENNIG CO., INC. |
| | CLAIMANT | : DAVID OLDREAD |
| | DATE OF LOSS | : 4/16/08 |
| | CLAIM # | : B6G1317 |

We are the general liability insurance carrier for the above named policyholder. This letter will serve as our demand (on behalf of our policyholder and Owner) for defense, indemnification, and reimbursement of any and all costs incurred by or on behalf of our insured in the defense of the claim. Enclosed is a copy of Carved Rock's certificate of insurance, Change Order, accident report, and letter of attorney representation.

&#9312;   It is our belief that your company is contractually obligated to defend and indemnify our policyholder against the claim presented pursuant to the applicable subcontract agreement for the project .

&#9313;   It is also our belief that your company is obligated to have our policyholder and Zoologigal Society of Buffalo named as an additional insured under any and all commercial general liability and commercial excess liability policies held by your company. As an additional insured under said policy (or policies), our policyholder is entitled to defense and indemnification by your insurance carrier(s) for the claim presented.

We will request that you immediately place your commercial general liability and excess insurance carrier on notice of this matter. Please be advised that a failure on your part to promptly notify said insurance carriers may ultimately result in your company being denied coverage under an otherwise applicable policy or policies.

We will also request that your insurance carrier immediately acknowledge receipt of this matter to the undersigned in writing, and promptly advise us as to their position with regard to:

&#9312;   The claim of our policyholder for defense and indemnification under the applicable subcontract;  and

&#9313;   Whether or not our policyholder qualifies as an additional insured under their policy (or policies).

Thank you for your attention to the above, and for your anticipated cooperation. Please feel free to contact me if you should have any questions.

Sincerely,

Joseph D. Bianchi
Sr. Technical Specialist

Page 2

Cc:  Duane Weber Insurance
     PO Box 1087
     Kent, WA 98035



*Joseph D. Bianchi*
*Sr. Technical Specialist*
*Travelers*
*(585) 321-8325*
*(866) 228-7729  fax*

*PO Box 22986*
*Rochester, NY 14692*

June 17, 2008

Carved Rock LLC
5812 S. Adams St. Ste B
Tacoma, WA 98409

Burlington Insurance Company
238 International Road
Burlington, NC 27215

RE:
Insured: Manning Squires Hennig Co., Inc.
Claimant: David Oldread
DOL: 4/16/08
Claim #: B6G1317

To Whom It May Concern:

Travelers is the general liability insurance carrier for Manning Squires Hennig Company relevant to the above captioned claim.

We have not yet received a response to our tender dated April 25, 2008, copy enclosed. Please forward this matter to your liability insurance carrier so they can promply respond to our demands.

Sincerely,

Joseph D. Bianchi
Sr. Technical Specialist

Cc: Duane Weber Insurance
     PO Box 1087
     Kent, WA 98035

June 17, 2008

Joseph Bianchi
Travelers
PO Box 22986
Rochester, NY  14692



IFG Companies®

The Burlington
Insurance Company
100 Pearl Street
Hartford, CT  06103

## CERTIFIED & REGULAR MAIL

RE:   Our Policyholder:       Carved Rock LLC
      Our Policy Number:      HGL0016944
      Our Claim #:            167761
      Date of Incident:       April 16, 2008
      Claimant:               Dave Oldread

Dear Mr. Bianchi:

The Burlington Insurance Company (TBIC) is the Commercial General Liability carrier for Carved Rock LLC (Carved Rock).

We are in receipt of your recent tender letter written on behalf of your insured, Manning Squires Hennig Co Inc (Manning).   You allege that Carved Rock is contractually obligated to defend and indemnify your policyholder against the subject claim which you advise was presented subject to a subcontract, a copy of which you do not provide.   You also allege that Carved Rock is obligated to name Manning and Zoological Society of Buffalo as additional insureds.   You enclose a Certificate of Insurance naming Manning as the certificate holder and Carved Rock as the insured.   In addition, you enclose a Change Order signed by Carved Rock and by Manning, which notes that Manning provided labor to Carved Rock.   There is no indemnification or defense language in this order.

TBIC issued Carved Rock a Commercial General Liability Policy, number HGL0016944.   This policy utilizes the Commercial General Liability Coverage Form CG0001 (10/2001). The effective dates for this policy extend from September 26, 2007 through September 26, 2008.

Clara K. Hurley
*Area Claim Manager*
860-723-8264
Fax 860-723-8230
ckhurley@ifgcompanies.com

We have reviewed your tender request, along with the provisions of the subject Commercial General Liability Policy, and regret to inform you that we cannot accept your tender request on behalf of Carved Rock for the reasons outlined in this letter.

Please refer to the Insuring Agreement of the subject Commercial General Liability Policy. We have highlighted certain sections of the policy in this letter.

### SECTION I – COVERAGES

#### COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Now please direct your attention to Endorsement IFG-G-0055 (6/2001), where the following is outlined:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS**
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

Name of Person or Organization

Any person or organization with whom you have agreed, in a written contract, that such person or organization should be added as an additional insured on your policy, provided such written contract is fully executed prior to an

"occurrence" in which coverage is sought under this policy.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

It is agreed that such insurance as is afforded by this policy for the benefit of the Additional Insured shall be primary insurance, and any other insurance maintained by the Additional Insured shall be excess and non-contributory, but only as respects any claim, loss or liability arising out of the operations of the Named Insured, and only if such claim, loss or liability is determined to be solely due to the negligence or responsibility of the Named Insured.

There is not an additional insured endorsement on the Commercial General Liability Policy issued by TBIC naming Manning or Zoological Society of Buffalo as additional insured. Manning and Zoological Society of Buffalo do not qualify as additional insureds on the Commercial General Liability Policy issued to Carved Rock by TBIC. In order to qualify as an additional insured on the subject policy, a written contract must exist in which Carved Rock agreed to name Manning and/or Zoological Society of Buffalo as an additional insured. No written contract has been presented which exists between Carved Rock and Manning and/or Zoological Society of Buffalo. There is no duty or the potential for any duty for TBIC to defend or indemnify Manning and/or Zoological Society of Buffalo in this matter on the basis of additional insured status or contractual obligation.

If a contract exists between Carved Rock and Manning and/or Zoological Society of Buffalo, kindly forward a copy of the signed contract to my attention.

Based on the above, TBIC has no duty to defend and indemnify Manning Squires Hennig Co Inc and/or Zoological Society of Buffalo in this matter.

Neither this communication and undertaking, nor any future communication or undertaking, should be deemed or construed as a waiver of TBIC's rights and defenses, including rights and defenses under the contract of insurance issued to Carved Rock LLC or as an expansion of the duties owed by TBIC under the policy.

If you possess or obtain information that has a bearing on our coverage position, please provide it to us.  If you have any questions regarding our coverage position, please contact the undersigned.

Sincerely yours,

Clara K Hurley
Area Claim Manager


cc:     Carved Rock LLC
        8511 S 119th Street
        Seattle, WA  98178

        Cochrane & Company
        1717 S Rustle, Suite 200
        Spokane, WA  99224



*Joseph D. Bianchi*
*Sr. Technical Specialist*
*Travelers*
*(585) 321-8325*
*(866) 228-7729 fax*

*PO Box 22986*
*Rochester, NY 14692*

August 8, 2008

Clara Hurley
Burlington Insurance
Via Fax (860) 723-8230

RE:
Insured: Manning Squires Hennig Co., Inc.
Claimant: David Oldread
DOL: 4/16/08
Claim #: B6G1317
Your Insured: Carved Rock LLC
Your Claim #: 167761

Dear Ms. Hurley:

As we discussed, the claimant was under the exclusive supervision, direction, and control of Carved Rock at the time of this accident. Enclosed is a copy of the Change Order under which our insured provided labor to Carved Rock.

At this time we renew of tender dated April 25, 2008 and again request a copy of your general liability policy to confirm Manning's status as additional insured.

Sincerely,

Joseph D. Bianchi
Joseph D. Bianchi
Sr. Technical Specialist

MSH #0066092



# MANNING SQUIRES HENNIG CO., INC.
### General Contractors

P.O. Box 685
Batavia, NY 14021

Phone: (585)343-5365
Fax:    (585)343-7452

---

## SUBCONTRACT

Agreement made this **11**th day of **December, 2006** between Manning, Squires, Hennig Co., Inc. as Contractor and **CarvedRock LLC** as Subcontractor.

## DEFINITIONS

CONTRACTOR:  Manning Squires Hennig Co., Inc.

SUBCONTRACTOR:  CarvedRock, LLC
8511 S. 119th St.
Seattle, WA 98178

PH: (206)919-8624
FX: (206)771-2832

OWNER:  As used in this subcontract the term "Owner" refers to Zoological Society of Buffalo and the owner's various agents, including without limitation any of the following: the construction manager, the general contractor, the design professionals and the testing laboratory.

PROJECT:  Buffalo Zoo
South American Rain Forest

CONTRACT:  As used in this subcontract the term "Contract" refers to the agreement between Manning Squires Hennig Co., Inc and Zoological Society of Buffalo.

SUBCONTRACT WORK: See Attachment A

SUBCONTRACT SUM:  one million, two hundred twenty-nine thousand dollars ($1,229,000.00)
Project is tax exempt, certificate is attached.

PROJECT SCHEDULE:  as directed by MSH personnel

PAYMENT PERIOD:  refer to page 2, paragraphs 4-7

REQUISITION DATE:  Pencil invoice by the 5th of the following month

PREVAILING RATE
SCHEDULE PRC No.:  2006004125 original attached, updates available online (www.labor.state.ny.us)

EXHIBITS INCORPORATED
INTO THIS CONTRACT: Exhibits I, II, III, IV, Attachment A, and Attachment B

THE WORK

1.    The Subcontractor agrees to supply all labor, material, tools and equipment necessary to provide the Subcontract Work in accordance with the Subcontract Documents which consist of this Subcontract and the Contract between the Owner and the Contractor including all general conditions, plans, drawings, specifications and addenda, such Agreement being fully incorporated by reference herein.

2.    The Subcontractor assumes and agrees to perform, as to the Subcontract Work, all obligations placed upon the Contractor under the Contract. When a provision of the Contract is inconsistent with any provision of this Subcontract, the Subcontract shall take precedence. The subcontractor acknowledges that the Contract has been made available to the Subcontractor prior to the execution of this Subcontract. The Contract shall remain available for Subcontractor's inspection or review during regular business hours at the job site and at the principal office of the Contractor.

3.    The Subcontractor shall at his own expense comply with all Federal, State and local laws, ordinances, rules and regulations relating to or affecting the Subcontract Work. The Subcontractor shall at his own expense secure and obtain any and all permits, licenses, and consents that may be necessary in connection therewith.

PAYMENT

4.    ~~The Contractor agrees to pay the Subcontract Sum in progress payments~~ (See Attachment B, note 1). The Subcontractor shall submit to the Contractor periodic applications for payment at such times, in such form and supported by such data substantiating the Subcontractor's right to payment as may be required by the Contractor, or as may be required by the Owner under the terms of the Contract. (See Attachment B, note 2) The Subcontractor shall submit progress payments applications to the Contractor no later than the specified day of each payment period for work performed or to be performed up to the last day of each payment period. Applications received later than the specified day of the payment period will not be included in the Contractor's requisition for payment from the Owner. ~~Progress payments are subject to 10% retention.~~ The Contractor agrees to pay the Subcontractor out of funds received from the Owner for the Subcontract Work performed and requisitioned within thirty calendar days of receipt of such funds.

5.    The Contractor may, at its sole option, from time to time, in order to expedite the Subcontract Work, make payments to the Subcontractor for materials and equipment not incorporated in the work but which have been delivered to and suitably stored at the site or at some other location agreed upon in writing. As a condition precedent to payment for such stored materials and equipment, the Subcontractor shall furnish bills of sale, evidence of insurance policies protecting the Contractor and the Owner against loss and such other documents required by the Owner or Contractor, as may be necessary to establish the Owner's title to such materials or equipment or otherwise to protect the Owner's and Contractor's interest in such materials or equipment. The Subcontractor is responsible for all costs in connection with stored materials or equipment including the costs of complying with the payment requirements set forth above.

6.    Payments made by the Contractor to the Subcontractor hereunder shall be used by Subcontractor to pay its employees, lower tier subcontractors, equipment and material suppliers, payroll taxes, and union or other benefit funds for amounts due in connection with the performance of the Subcontract Work. At the sole option of the Contractor and upon its demand, the Subcontractor shall furnish evidence of payment to any of the above in the form of lien waivers, paid invoices, receipts or other satisfactory evidence. In the event that the Contractor has reason to believe that the Subcontractor is not paying obligations incurred in the performance of the Subcontract Work, the Contractor shall give written notice of such claim or lien to the Subcontractor. Upon receipt of this notice, the Subcontractor shall supply evidence to the satisfaction of the Contractor that the monies owning to the claimant have been paid or, if a lien has been filed, evidence that the lien has been discharged by bond. If the Subcontractor fails to supply evidence of payment or fails to discharge said lien by bond within two (2) weeks of the notice, the Contractor shall have the right to retain out of any payments due or to become due to the Subcontractor a reasonable amount to protect the Contractor from any and all loss, damage or expense including attorneys' fees or bond premiums arising out of or relating to any such claim or liens until the Subcontractor has satisfied the claim or lien. The Contractor, in its sole discretion, may bond any lien and charge the costs of bonding the lien including bond premiums, court costs and attorneys' fees against monies due or to become due under the Subcontract. The Contractor may take any steps deemed necessary by it to assure that payments made under this Subcontract are used to pay such obligations, including but not limited to issuing joint payee checks.

7.    Final payment, consisting of the entire unpaid balance of the subcontract sum, shall be made when the Subcontract Work is fully completed and is accepted by the Owner and the Contractor. Payment shall be due twenty (20) days after the Contractor's receipt of final payment from the Owner. Before final payment is made to the Subcontractor, the Subcontractor shall, as conditions precedent to payment: (1) submit evidence in forms satisfactory to the Contractor and Owner that all payrolls, bills for materials and equipment, and all indebtedness connected with the Subcontractor's work on the Project have been satisfied; (2) submit a consent of surety to final payment if bonds have been required of the Subcontractor; (3) submit certification that insurance required to remain in effect beyond final payment is in effect and will not be canceled or allowed to expire without at least (30) days written notice to the Contractor; (4) execute and submit any

-1-

Attachment B

Project:        Buffalo Zoo
                South American Rain Forest

Subcontractor:  CarvedRock LLC

**Note 1**
The Contractor agrees to make monthly payments to the subcontractor in the amount of
$155,000 per month for a five (5) month period to begin once Subcontractor has commenced
work.

**Note 2**
Any money requested above the $155,000 must be verified through the submittal and review
of certified payrolls, supplier invoices for materials & equipment.

written warranties required under the subcontract documents; and (5) furnish any as-built drawings, operations and maintenance manuals, and final approval shop drawings associated with the Subcontract Work as may be required by the Contract.

## CONTRACTOR'S RIGHT TO WITHHOLD PAYMENT

8.     The Subcontractor agrees to pay promptly any and all sums of money due by him for labor, materials and services, including insurance and taxes, furnished in the performance of the Subcontract Work, and the Contractor shall have the right to receive as a condition precedent to the making of any payment hereunder, satisfactory evidence, including substantiating vouchers of the payment by the Subcontractor and those working under the Subcontractor, of all indebtedness incurred for labor, material and services furnished, and the Subcontractor and those working under the Subcontractor shall, when requested by the Contractor, furnish certificates showing such payments. In the event of non-payment of any such sums as aforesaid, for which the Contractor or the Owner might be or become liable, or in the event of damage by the Subcontractor to other work on the structure, or in the event of a breach of any provision of this Subcontract by the Subcontractor, the Contractor may retain and pay to the parties entitled thereto, including the Contractor and the Owner, as the case may be, out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify the Contractor and the Owner for any loss or damage, including attorney's fees, which either may sustain thereby. Should there prove to be any such claim, damage, or default remaining after all payments are made, the Subcontractor shall refund to the Contractor all monies that the Contractor or Owner may be chargeable with by reason of said claim, damage, or default as well as expenses incurred in connection therewith.

9.     In addition to any other remedy the Contractor may have, the Contractor may withhold any payment, or any portion thereof, from any payments due to the Subcontractor to such extent as may be necessary in the opinion of the Contractor to protect the Contractor from loss on account of: (1) failure of the Subcontractor to perform properly under the Contract Documents, (2) defective work not remedied, (3) claims filed or reasonable evidence indicating probable filing of claims against the Subcontractor, (4) failure of the Subcontractor to make payments properly due to its subcontractors or to pay for material or labor, (5) damage caused by the Subcontractor to another contractor or any one else for which the Contractor may be held liable, and (6) damages which have or may be incurred by the Contractor arising from delay or other default of the Subcontractor.

10.     No certificate given nor payment made hereunder, including the final payment, shall be conclusive evidence of proper performance of the Subcontract, either wholly or in part, and no payment, including final payment, shall be construed to be an acceptance of defective work or improper materials.

## PERFORMANCE OF THE WORK

11.     The Subcontractor agrees to commence and complete the Subcontract Work in accordance with the Project Schedule and to perform its work in the sequence and within the time specified therein. The Contractor shall have the right to revise the schedule from time to time and to determine the time, order and priority in which the various parts of the work shall be performed.

Time is of the essence of this Subcontract, and the Subcontractor, in agreeing to complete the Subcontract Work within the time mentioned, has taken into consideration and made allowances for delays and hindrances incidental to such work whether growing out of delays in securing materials or workmen, changes, omissions, alterations, and interference's by others. If the Subcontractor is substantially delayed by any changes, omissions or additions, by fire or other unavoidable casualty or by strikes or lockouts not caused by the acts of the Subcontractor, or by reason of the acts of the Owner or the Contractor in providing materials and performance of labor for parts of such work as are not included in this Subcontract in such a manner as to unreasonably delay the material progress of the Subcontract Work, then the Subcontractor shall, within five business days after the occurrence of the cause of the delay for which it claims allowance, notify the Contractor in writing. If satisfied that the delay is substantial and was caused by other than the Subcontractor, the Contractor shall, in writing grant the Subcontractor an extension of time to complete the Subcontract Work. Such extension shall be for a time sufficient in Contractor's judgment to make up the time so lost. Under no circumstances will the Subcontractor be entitled to an increase in the subcontract price or to damages or additional compensation as a consequence of delays or interference, or loss of productivity, whether caused by the Owner, the Contractor or other subcontractors except where such additional compensation is collected by the Contractor on behalf of the Subcontractor.

12.     If, as a result of any strike, lockout, fire, lightning, earthquake or cyclone, or any other causes beyond its control the Contractor is obstructed or prevented from performing any work under the Contract, and considers it inadvisable to continue to perform the work, then the Subcontractor shall, upon notification from the Contractor, cease deliveries to and performance of any Subcontract Work until such times as, in the opinion of the Contractor, the conditions are such that it is advisable to resume performing the work. The Subcontractor hereby agrees to and will resume delivery of materials and performance of the Subcontract Work as required by written notification to it by the Contractor, and no claim for damages shall be made by either party hereto on account of any cessation of work for the causes aforesaid. It is further agreed, that should the work of the General Contract be delayed either because of labor difficulties such as



Initials

strikes or lockouts, or for any other reason or cause beyond Contractor's control, then the Contractor may, terminate this Subcontract, paying the Subcontractor for only such portion of the Subcontract Work completed, and for materials which shall have been fabricated or delivered, up to the date of such termination, which portion shall be determined by the Contractor on a pro rata basis, no allowance being made for anticipated profit on that portion of the Subcontract Work not completed.

13.　The Subcontractor shall maintain such safety programs as are required by law and shall promptly supply to the Contractor all requested information regarding such programs. A failure to maintain an adequate safety program will be a material breach of this Subcontract and grounds for termination. Prior to the delivery of material to the job site, the Subcontractor shall submit material data safety sheets applicable to such materials to the Contractor. The Subcontractor agrees to hold harmless and indemnify the Contractor for any costs, including reasonable attorney's fees and penalties that may be incurred by Contractor because of the Subcontractor's breach of this paragraph. All such costs and penalties shall be deducted from the amounts payable to Subcontractor under this Subcontract.

14.　The Subcontractor is responsible for providing and maintaining its own scaffolding and for unloading, storing and hoisting materials and equipment. The Subcontractor shall supply all tools and equipment for use by itself, its agents, servants or employees. The Subcontractor, its agents, servants or employees shall not take, borrow, possess or use any tools or equipment being the property of the Contractor or being in the possession of the Contractor.

15.　The Subcontractor shall keep the premises free from accumulations of waste materials and rubbish occasioned by its work. The Subcontractor agrees to remove all rubbish and debris from the job site, and in the event the Subcontractor shall fail to do so, the Contractor may cause said rubbish and debris to be removed and charge the Subcontractor the cost thereof.

16.　The Subcontract Work shall conform to the material and workmanship standards of the General Contract and shall be subject at all times to Owner's and Contractor's inspection and approval. The Subcontractor shall provide sufficient, safe and proper facilities at all times for the inspection of the Subcontract Work by the Contractor and the Owner and shall pay for all costs of inspection and testing which may be incurred to determine the acceptability of the Subcontract Work.

17.　The Subcontractor shall within twenty-four (24) hours after receiving written notice from the Contractor to the effect, proceed to remove from the grounds or building all material condemned by the Contractor or Owner whether worked or unworked, and to take down all portions of the Subcontract Work which the Contractor may, by like written notice, condemn as unsound or improper or as in any way failing to conform to the plans, drawings and specifications. The Subcontractor shall, without additional expense to the Contractor or Owner, replace such condemned work with work, which is satisfactory.

## BONDS & INSURANCE

18.　The Contractor at all times reserves the right to require the Subcontractor to furnish a corporate surety labor and material payment bond and/or performance bond in a penal sum equal to the Subcontract Sum, guaranteeing and assuring the performance by the Subcontractor of all the provisions of this Subcontract, and guaranteeing and assuring payment by the Subcontractor to all persons supplying labor and materials in the prosecution of the Subcontract Work. The form of such bonds, and the Surety Company furnishing it, will be subject to the approval of the Contractor. The premium for said bond or bonds should be paid by the Contractor. The Subcontractor's failure to deliver such bonds to Contractor within ten days of the Contractor's written demand shall be deemed a material breach of this Subcontract.

19.　The Subcontractor shall secure and protect the Subcontract Work and shall bear and be liable for all loss or damage of any kind which may happen to the Subcontract Work at any time prior to the final completion and acceptance thereof, the Subcontractor being responsible until the Subcontract Work has been fully completed and approved by the Contractor and accepted by the Owner. If the Owner or Contractor has not purchased Builder's Risk Insurance for the full insurable value of the Subcontract Work, less a reasonable deductible, the Subcontractor shall purchase such insurance including "all risks" coverage from reliable companies. Such insurance shall be for the full insurable value of the Subcontract Work and all materials and equipment to be incorporated in the Subcontract Work whether stored on or off the site, in amounts sufficient to protect the Subcontractor, its subcontractors and their subcontractors, such insurance being made payable to the Owner, the Contractor and the Subcontractor as their joint interests may appear.

20.　The Subcontractor shall, to the extent permitted by law, defend, indemnify and hold harmless the Contractor and the Owner and their officers, agents, and employees against all claims for damages, losses and expenses, including reasonable attorneys' fees, arising out of or on account of any actions or omissions by the Subcontractor, its agents, or employees which cause or contribute to cause injury to persons or property.

21. To the fullest extent permitted by law, Subcontractor shall indemnify, hold harmless and defend Contractor and all of its



-3-



Initials

agents and employees from and against all claims, damages, losses and expenses including but not limited to attorneys' fees arising out of or resulting from the performance of the Agreement, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property, including loss of use resulting therefrom, and (b) is caused in whole or in part by any act or omission of Subcontractor or anyone directly or indirectly employed by it or anyone for whose acts it may be liable, regardless of whether it is caused in part by the negligent act or omission of Contractor or any of its agents and employees. Notwithstanding the foregoing, Subcontractor's obligation to indemnify Contractor or any of its agents and employees for any judgement, decree, mediation or arbitration award or settlement shall extend only to the percentage of negligence of Subcontractor in contributing to such claim, damage, loss and expense. In any and all claims against Contractor or any of its agents or employees, by any employee of Subcontractor, the indemnification obligation under this paragraph shall not be limited by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under workers compensation acts, disability benefit acts or other employee benefit acts.

22. All Subcontractors and their Subcontractors shall purchase and maintain insurance of the following types of coverage and limits of liability prior to the commencement of the Subcontractor's Work. Such coverage shall remain in effect for the entire term of the Subcontractor's Work and shall be obtained at the sole cost and expense of the Subcontractor. Evidence of all insurance coverage must be provided to Contractor prior to the commencement of the Subcontractor's Work in the form of insurance certificates/and or insurance policies, endorsements and riders.

1) Commercial General Liability (CGL) coverage with limits of Insurance of not less than $1,000,000 each occurrence and $2,000,000 Annual Aggregate.
   a) If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.
   b) CGL coverage shall be written on ISO Occurrence form CG 00 01 10 01 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury. There shall be no exclusions to Contractual Liability for Employee Injuries (ie Labor Law Exclusions).
   c) Contractor, Owner and all other parties required of the Contractor, shall be included as additional insureds on the Commercial General Liability, using ISO Additional Insured Endorsement GC 20 10 (11 85) or CG 20 10 (10 93) and CG 20 37 (10 01) or CG 20 33 (10 01) and CG 20 37 (10 01) or an endorsement providing equivalent coverage to the additional insureds. Coverage for the additional insureds shall apply as Primary and Non-contributing Insurance before any other insurance of self-insurance, including any deductible, maintained by, or provided to, the additional insured.
   d) Subcontractor shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least 6 years after completion of the work.
2) Automobile Liability
   a) Business Auto Liability with limits of at least $1,000,000 each accident.
   b) Business Auto coverage must include coverage for liability arising out of all owned, leased, hired and non-owned automobiles.
   c) Contractor, Owner and all other parties required of the Contractor shall be included as additional insured on the auto policy.
3) Commercial Umbrella
   a) Umbrella limits must be at least $5,000,000
   b) Umbrella coverage must include as additional insureds all entities that are additional insureds on the CGL.
   c) Umbrella coverage for such additional insureds shall apply as primary before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured other than the CGL, Auto Liability and Employers Liability coverages maintained by the Subcontractor.
4) Workers Compensation and Employers Liability
   a) Employers Liability insurance limits of at least $500,000 each accident, $500,000 for bodily injury by accident and $500,000 each employee for injury by disease.
   b) Where applicable, US Longshore and Harborworkers Compensation Act Endorsement shall be attached to the policy.
   c) Where applicable, the Maritime Coverage Endorsement shall be attached to the policy.
5) Owners/Contractors Protective Liability
   a) If the coverages can not be provided by endorsement an "Owner & Contractor' Protective policy will be required for the same limits noted and in the name of the "Contractor" and "Owner".
     A separate OCP policy with limits of $1,000,000 occurrence and $2,000,000 Aggregate Limit


Initials

b) Manning Squires Hennig shall be listed as the NAMED INSURED and a copy of the policy shall be sent directly to Manning Squires Hennig.

c) A Certificate of Insurance shall be furnished naming Manning Squires Hennig as the Named Insured and Certificate Holder.

6) Hazardous Materials

If Subcontractor and/or its subcontractors or suppliers, regardless of tier, perform remediation of hazardous material, or if their operations create an exposure to hazardous materials as those terms are defined in federal, state, or local law, Subcontractor and its subcontractors and suppliers must obtain a 'Contractor's Pollution Liability' policy with limits not less than $1,000,000 per occurrence and $2,000,000 aggregate for Bodily Injury, Personal Injury, and Property Damage, naming Contractor and Owner as additional insured. If Subcontractor or its subcontractor's or suppliers haul hazardous material (including, without limitation, waste), they must carry Auto Liability insurance with a $1,000,000 combined single limit for Bodily Injury and Property damage applicable to all hazardous wast hauling vehicles, and include MCS 90 and CA9948.

7) Professional Liability

Any subcontractor performing work that includes any design/build work or services shall obtain a Professional Liability Insurance Policy. Design/build work includes without limitation, design/build work with respect to mechanical, structural, plumbing, and fire sprinkler systems. Coverage must allow for a minimum of two years following the completion of the project. If Owner or Contractor elects to purchase a project design policy, Subcontractor's policy shall be endorsed to provide excess coverage only.

8) Rigger's Liability and Aircraft Liability

Should Subcontractor's work involve the moving, lifting, lowering, rigging or hoisting of property or equipment, Subcontractor shall carry Rigger's Liability Insurance to insure against physical loss or damage to the property or equipment. If Subcontractor (or its subcontractors or suppliers, regardless of tier) use any owned, leased, borrowed chartered or hired aircraft of any type in the performance of this subcontract, they shall maintain aircraft liability in an amount of not less than $10,000,000 per occurrence, including Passenger Liability. Evidence of coverage in the form of a certificate of insurance shall be provided prior to the start of the project.

23    Waiver of Subrogation – Subcontractor waives all rights against Contractor, Owner and Architect and their agents, officers, directors, and employees for recovery of damages to the extent these damages are covered by commercial general liability, commercial umbrella liability, business auto liability or workers compensation and employers liability insurance maintained per requirements stated above. Subcontractor's Workers Compensation policy has Waive of Our Right to Recover From Others Endorsement with Contractor, Owner and Architect listed on schedule.

24.    Accident Reporting – Any event of loss, damage, injury or death to any person(whether employed by the Subcontractor or not) or to any property on or about the Project Site that the Subcontractor (or its Subcontractors) becomes aware of, must be reported to the Contractor immediately. A written incident report describing the accident or loss must be filed with Contractor within twenty-four(24) hours of said accident or loss.

25.    Attached to each certificate of insurance shall be a copy of the Additional Insured Endorsement that is part of the Subcontractor's Commercial General Liability Policy and Umbrella policy. These certificates and the insurance policies shall contain a provision that coverage afforded under the policies will not be cancelled or allowed to expire until at least 30 days prior written notice has been given to the Contractor. In the event that the Subcontractor fails to obtain or maintain any required insurance the Contractor may, at its sole option, terminate the Subcontractor or purchase such insurance and charge the expense thereof to the Subcontractor.

26.    The Contractor and Subcontractor waive all rights against each other, the Owner, separate contractors and other subcontractors, or employees of any of them, for loss or damage to the extent such loss or damage is covered by Builder's Risk or other property or equipment insurance. Specifically excepted from this waiver are any rights of the Subcontractor or Contractor to the proceeds of such insurance. [Specifically excepted from this waiver are losses or damages caused by the acts or omissions of the Owner's design professionals or their employees to the extent that such loss or damage arises from their preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or from their directions or instructions or failure to give directions or instructions where such giving or failure is the primary cause of the injury or damage.]

## LABOR RELATIONS

27.    The Subcontractor agrees that in the manufacture, assembling, delivery, erection, or installation of the material covered by this Contract, it shall employ only such labor and such procedures as will enable the Subcontractor to erect or install, as required, said material at the job site in harmony with all trades employed on this operation.



Initials

28.     If the Contractor establishes separate gates on the Project, the Subcontractor agrees to use and shall cause its employees, its subcontractors, suppliers and business visitors to use such separate gate or gates at such times and in such manner as the Contractor may from time to time direct.

29.     The Subcontractor agrees to accept and abide by the procedural rules, decisions and agreements of the National Joint Board for Settlement of Jurisdictional Disputes in the Building and Construction Industry. All jurisdictional disputes which may arise under this Subcontract shall be settled in accordance with Joint Board Procedures.

## CHANGES

30.     No alterations, additions or deletions in the Subcontract Work shall be made by the Subcontractor except upon written order of the Contractor. No additional compensation for extra work or changed work will be paid unless agreed to in writing before the work is done or the changes made. The writing shall specify the extra work or changes in detail as well as the adjustment to be made in the subcontract price or the subcontract time. If extra work is to be done on a time and material basis, the Subcontractor shall prepare time and material Reports on a daily basis and furnish them daily to the Contractor for his signature.

## ASSIGNMENT

31.     The Subcontractor shall not subcontract or otherwise assign the Subcontract Work or any part thereof, nor shall the Subcontractor sublet or assign the Subcontract, without the written consent of the Contractor. The consent of the Contractor to such assignment shall not relieve the Subcontractor from the performance obligations of this Subcontract and the Subcontractor shall be fully responsible for the selection of the assignee and shall guarantee his performance thereof. Requests for such consent can be made in simple letterform identifying the assignee and specifying the particular work assigned. Consent shall be deemed given unless the Contractor notifies the original Subcontractor that consent is refused within five working days following the receipt of the request.

## DEFAULT

32.     The Subcontractor shall be in default if:

  a. The Subcontractor refuses or fails to supply enough properly skilled workers or materials, or
  b. The Subcontractor fails to maintain the schedule of work, or
  c. The Subcontractor fails to make prompt payment to its workers, Sub-Subcontractors or suppliers, or
  d. The Subcontractor disregards or violates any laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or
  e. The Subcontractor otherwise materially breaches a provision of this Contract.

33.     If the Subcontractor fails within three (3) working days after receipt of a written notice to commence and continue satisfactory correction of such default with diligence and promptness, then the Contractor, without prejudice to any other rights or remedies, shall have the right to any or all of the following remedies:

  a. To supply workers, material, equipment and other facilities as the Contractor deems necessary for the completion of the Subcontractor Work, or any part of the Subcontract Work which the Subcontractor has failed to complete or perform after said notice, and charge the cost thereof to the Subcontractor;
  b. To contract with one or more additional contractors to perform such part of the Subcontract Work as the Contractor determines will provide the most expeditious completion of the Subcontract Work or any part of the Subcontract Work and charge the cost thereof to the Subcontractor;
  c. Withhold payment of any monies due the Subcontractor pending corrective action;
  d. Terminate the Subcontractor's employment and use any materials, implements, equipment, appliances or tools furnished by or belonging to the Subcontractor to complete the Subcontractor Work. The Contractor may also furnish materials, equipment and/or employ such workers or other subcontractors as the Contractor deems necessary to maintain the orderly progress of the work.

34.     All costs incurred by the Contractor in connection with Subcontractor's default, including but not limited to costs to complete all or a part of the Subcontract Work, reasonable overhead, profit and attorneys' fees, shall be deducted from any monies due or to become due to Subcontractor. The Subcontractor shall be liable for the payment of any amount by which such costs exceed the unpaid balance of the Subcontract Sum.



Initials

35.  If the Contractor wrongfully exercises any option under paragraphs 33 and 34, the Contractor shall be liable to the Subcontractor solely for the reasonable value of work performed by the Subcontractor prior to Contractor's wrongful action, including reasonable profit and overhead on the Subcontract Work performed.

36.  The Contractor may terminate Subcontractor's performance of all or a part of the Subcontract or Subcontract Work for convenience and without cause even though the Subcontractor is not in default.  Such termination shall be effective two days after the Subcontractor's receipt of written notice of such termination.  Upon receipt of such notice, the Subcontractor shall, unless the notice otherwise directs:

a.  Immediately discontinue the Subcontract Work or stop work on the part of the Subcontract Work that has been terminated if only part of the Subcontract Work has been terminated;

b.  Enter into no further orders for supplies, materials or facilities, except as necessary to complete any portion of the Subcontract Work that is not terminated for convenience;

c.  Terminate all orders and sub-subcontracts related to the terminated Subcontract Work;

d.  As directed by Contractor, transfer title and deliver to Contractor all fabricated or unfabricated parts, completed work, work in progress and such other materials produced or acquired by Subcontractor in connection with the performance of this Subcontract or the terminated Subcontract Work, and take such action as may be necessary or as the Contractor may direct for protection and preservation of the work relating to this Subcontract;

e.  Deliver all plans, drawings, specifications and other necessary information to the Contractor with respect to the terminated Subcontract Work.

f.  Complete non-terminated portions of the Subcontract Work if the performance of only a part of the Subcontract Work has been terminated; and,

g.  Submit within 60 days of the effective date of termination, a written detailed termination claim for compensation as provided for below.

37.  If the Contract has been terminated, the Contractor's liability to the Subcontractor shall be limited to the amount Contractor recovers from the Owner on the Subcontractor's behalf in accordance with the Contract. If the Contract has not been terminated, the Contractor shall pay the Subcontractor based upon the Subcontract Sum for the Subcontract Work actually performed and equipment and materials supplied to the Project, taking into account payments already made to the Subcontractor and excluding any lost profits or unabsorbed overhead on Subcontract Work not required to be performed and materials not required to be furnished.  The Subcontractor shall not be entitled to any compensation for accounting, legal, clerical or other expenses in the preparation of its termination claim.

## MISC PROVISIONS

38.  All negotiations and agreements prior to the date of this Subcontract are merged herein. The Subcontractor has read and fully understands this Subcontract.  This Subcontract, together with all documents, specifications and drawings incorporated herein by reference, constitutes the entire agreement between the Contractor and the Subcontractor and there are no other terms, conditions or provisions, oral or written, between the parties, other than those contained in this Subcontract.  This Subcontract supersedes any and all written representations, inducements or understandings of any kind or nature between the Contractor and the Subcontractor relating to the Project involved herein.  This Subcontract can not be modified other than by writing executed by an authorized representative of each party and neither party shall have any authority to waive this provision.

39.  This Subcontract shall be construed pursuant to the Laws of the State of New York. The Subcontractor agrees that it will not commence any action, whether in law or in equity, against the Contractor or its sureties on bonds, if any, because of any matter whatsoever arising out of the alleged breach or performance of this Agreement, in any Courts other than the Supreme Court of the State of New York, in the County of Genesee, and the Subcontractor expressly waives any and all rights the said Subcontractor might have by reason of the aforesaid bond provisions, if any, or by reason of any other cause whatsoever, to bring said action in any other court. The rights herein given the Contractor shall also be deemed for the direct benefit of the aforesaid sureties, if any, with the same force and effect as if they were parties hereto. No action shall lie or be maintained by the Subcontractor or anyone claiming under the Subcontractor upon any claim arising out of or based upon this Subcontract or the performance of the Subcontract Work or by reason of any act or omission or requirement of the Owner or the Contractor, or its representative, unless such action shall be commenced within one (1) year after the date the Subcontractor last performed work on the Project (exclusive of any warranty work).

40.  The failure or delay of either party in enforcing any right or obligation or any provision of this Subcontract in any instance shall not constitute a waiver thereof in that or any other instance.

41.  If any provision of this Subcontract or the application of any such provision to any person or circumstance is held



Initials

invalid, the remainder of this Subcontract and the application of such provision other than to the extent it is held invalid, will not be invalidated or affected thereby.

## PREVAILING RATES

The following two paragraphs are applicable only to public works projects:

42.   **Prevailing Wage Schedules** - Attached hereto is the Prevailing Wage Schedule currently in effect for this Project. During the life of the Project the wage rates noted in the Prevailing Wage Schedule may change. The Subcontractor agrees to pay the wage rates in effect at the time its work is performed as required by applicable laws and regulations. It is the Subcontractor's responsibility to anticipate changes in the Prevailing Wage Schedule and Prevailing Wage Rates. The Subcontractor hereby acknowledges that it has considered potential future changes to the Prevailing Wage Schedule and Prevailing Wage Rates for this Project and that the Subcontractor's price for the Subcontract Work hereunder has taken those potential changes into consideration. The amount payable to the Subcontractor will not be increased because of changes to the Prevailing Wage Schedule or increases in the Prevailing Wage Rates for this Project. The Subcontractor further acknowledges that where more than one Wage Schedule is in effect, i.e., State and Federal Wage Schedules, and conflicts between the two exist, the Subcontractor shall pay the higher wage rate and/or benefit amount. The Subcontractor agrees to furnish to the Contractor on a weekly basis, copies of the Subcontractor's weekly-certified payrolls for the project. Such payrolls will be submitted no later than the third workday of the week following the week in which the work was performed.

43.   **Prevailing Wage Law Violations** - The Subcontractor agrees to indemnify, defend and hold harmless the Contractor from any and all damages, losses or expenses arising from or relating to claims that the Subcontractor violated the prevailing wage law. Such damages, losses or expenses shall include but not be limited to interest at the rate of nine percent per annum on any funds withheld from the Contractor on account of such claims, wages, fringe benefits, interest or civil penalties assessed against the Contractor on account of such claims any attorneys' fees incurred by Contractor on account of such claims.

DATED: 9|21|07

MANNING SQUIRES HENNIG CO., INC.

BY:

Carved Rock, LLC

DATED:   9 - 20 - 2007

BY:

On public works projects the Subcontractor must submit one (1) executed original copy of the New York State Labor Law, Section 220-a, Subcontractor Certification Form as required by the Labor Law of the State of New York and the rules and regulations relative thereto.

-8-


Initials

Contractor:   Mar  .g Squires Hennig Co., Inc.            Attachment A
Subcontractor: CarvedRock, LLC                       Scope of Work

Project:     Buffalo Zoo
           South American Rainforest Exhibit

**The work shall include, but shall not necessarily be limited to, the following specific items of work.**

Furnish and deliver all material necessary to complete the shotcrete and animal box exhibits work in accordance with the plans and specifications including but not limited to the following specifications and listed items:

    Specification Section: 03371   Shotcrete
                         07161   Acrylic Modified Cementitous Waterproofing
                         11591   Animal Box Exhibits

Addendum #1, dated 7/31/06       Addendum #4, dated 8/30/06
Addendum #2, dated 8/11/06       Addendum #5, dated 9/08/06
Addendum #3, dated 8/18/06

All as prepared and specified in contract documents, by Foit-Albert Associates, and including but not limited to the following:

- Provide all necessary coordination information for items in your scope of work that involve other contractors
- Provide all hoisting and unloading for your work.
- Provide daily cleanup for your work
- Add Alternate #2 colored themed exhibit walkway is included.
- Pencil copy of invoices are due by the 5th of the following month.
- All submittals are due within four (4) weeks of receipt of this contract.
- Coordinate all deliveries with MSH Superintendent – Ken Maurer (716)570-7807 giving a minimum 48 hours notice prior to delivery.

# MANNING SQUIRES HENNIG CO., INC.

## SUBCONTRACTORS MINIMUM HEALTH AND SAFETY REQUIREMENTS

1. MAKE CERTAIN MSDS'S FOR ALL HAZARDOUS MATERIALS USED IN THE PERFORMANCE OF YOUR WORK ARE ON SITE. ADVISE OUR FOREMAN OF THE PERFORMANCE OF ANY WORK THAT MAY PRESENT A HAZARD TO ANY OTHER CONTRACTORS' EMPLOYEES AND THE PROTECTIVE MEASURES THAT SHOULD BE TAKEN.

2. FURNISH APPROVED PERSONAL PROTECTIVE EQUIPMENT (PPE) AND SAFETY EQUIPMENT TO YOUR EMPLOYEES AS REQUIRED. THE MINIMUM PPE REQUIREMENTS ARE A HARD HAT, SAFETY GLASSES (ANSI Z87.1)

3. PROVIDE THE NECESSARY SAFETY TRAINING AND INSTRUCTION TO INSURE EMPLOYEES ARE AWARE OF WORK HAZARDS, UNDERSTAND HOW TO USE PERSONAL PROTECTIVE EQUIPMENT AND COMPLY WITH OSHA SAFETY RULES AND REGULATIONS.

4. PERFORM FREQUENT AND REGULAR SAFETY INSPECTIONS OF WORK SITE CONDITIONS, WORK PRACTICES, TOOLS AND EQUIPMENT.

5. REPORT ALL ACCIDENTS AND INJURIES REQUIRING MEDICAL ATTENTION BY PROVIDING MANNING SQUIRES HENNIG CO., INC. WITH A COPY OF ANY ACCIDENT REPORTS WITHIN 24 HOURS.

6. KEEP FLAMMABLE AND COMBUSTIBLE LIQUIDS IN APPROVED SAFETY CONTAINERS AND LABEL/STORE IN ACCORDANCE WITH APPLICABLE LAWS AND REGULATIONS.

7. PERFORM REGULAR HOUSEKEEPING TO PREVENT THE ACCUMULATION OF UNNECESSARY MATERIALS THAT PRESENT TRIPPING/SLIPPING, HEALTH AND FIRE HAZARDS.

8. PROPERLY DISPOSE OF ANY UNUSED HAZARDOUS CONSTRUCTION MATERIALS IN ACCORDANCE WITH APPLICABLE ENVIRONMENTAL LAWS AND REGULATION.

9. PROVIDE THE NECESSARY FIRE PROTECTION EQUIPMENT AND FIRE PREVENTION MEASURES INCLUDING FIRE EXTINGUISHERS, PROPER STORAGE OF MATERIAL AND SUPPLIES AND FIRE WATCH.

10. PROVIDE FALL PROTECTION FOR EMPLOYEES EXPOSED TO FALLS OF 6FT OR MORE, IN ACCORDANCE WITH OSHA SUBPAART M. PROTECT ALL SCAFFOLDS, WORK PLATFORMS, OPEN SIDED FLOORS, OR ELEVATED WORK AREAS WITH PROPER GUARD RAILS AND PROVIDE SAFE MEANS OF ACCESS/EGRESS. PROTECT ALL FLOOR OPENINGS CREATED WITH PROPER COVERS OR GUARDRAILS.

11. PROVIDE PROPER LOCK-OUT TAGOUT TO PROTECT EMPLOYEES AND OTHER CONTRACTORS FROM HAZARDOUS ENERGY SOURCES, IN ACCORDANCE WITH OSHA REQUIREMENTS.

12. REGULARLY INSPECT JOB SITE EQUIPMENT SUCH AS TRUCKS, CRANES, FORKLIFTS, PERSONNEL LIFTS, HOISTING EQUIPMENT, ETC. FOR DEFECTS AND OSHA COMPLIANCE.

13. ANY TRENCH, CUT OR HOLE MUST BE PROPERLY SECURED, SLOPED, OR OTHERWISE PROTECTED FROM CAVE0INS. PROVIDE SAFE MEANS OF ACCESS/EGRESS WITHIN 25 FEET OF WHERE EMPLOYEES ARE WORKING.

14. WHERE WORK AREAS THAT MEET THE OSHA DEFINITION OF A "CONFINED SPACE" WILL BE ENTERED, PROPER SAFETY PROCEDURES IN ACCORDANCE WITH OSHA MUST BE FOLLOWED.

15. ANY SAFETY PROBLEMS OR DEFICIENCIES BROUGHT TO YOUR ATTENTION MUST BE CORRECTED IN A TIMELY MANNER.

16. ALL SUBCONTRACTOR EMPLOYEES ON SITES OPERATING UNDER THE RCSA CONTRACTOR HSE PREQUALIFICATION PROGRAM ARE REQUIRED TO HAVE COMPLETED AN OSHA 10-HR CONSTRUCTION OUTREACH TRAINING PROGRAM. PROOF OF COMPLETION IS THE OSHA 10-HR TRAINING CARD.



# EXHIBIT II
## Safety Policy & Procedures

### General Policy Statement:

Manning Squires Hennig is committed to providing a safe work place for those employed at its jobsites and considers a project's safety record to be a key element in the measure of its success. Essential to providing a safe work place are effective communication, thorough planning, and an ongoing commitment to safety from all those involved, either directly or indirectly, in the performance of the work.

## General Submittal Requirements (applicable to all projects)

We require the following submittals from you and each of your sub-contractors:

1. A copy of your Health and Safety Manual
2. A copy of your Hazard Communication Program
3. Copies of MSDS's for any hazardous chemicals or products which you bring onto the jobsite
4. Insurance certificates as specified in the attached subcontract
5. The identity of the "competent person" you designate to have overall responsibility for the jobsite administration of your safety program.

These submittals should be directed to the attention of the project manager at MANNING SQUIRES HENNIG CO, PO Box 685, Batavia, NY 14021

## Specific Requirements for work where the RCSA Contractor HSE Prequalification Program is in effect:

We require the following additional submittal from you and all your subcontractors:

Evidence that all employees working at the site for you or for subcontractors under your direction have completed an OSHA 10 hour Safety Training Course such as that offered by the Builders Exchange of Rochester.

This submittal should be directed to the attention of the project manager at the above address.

In addition, all employees working for you or for subcontractors under your direction must have in their possession whenever they are at the jobsite or on Eastman Kodak property evidence (such as the Course Completion Card) that they have completed the OSHA 10 hour Safety Training Course.

Exhibit III

**ACORD**     **CERTIFICATE OF INSURANCE**     DATE (MM/DD/YY)

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

*SAMPLE CERTIFICATE*

Insurance Agency
Name & Address

**COMPANIES AFFORDING COVERAGE**

| COMPANY A | A Insurance Company |
|---|---|
| COMPANY B | B Insurance Company |
| COMPANY C | |
| COMPANY D | |

**INSURED**    *SAMPLE CERTIFICATE*

Subcontractor name & complete address

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN. THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED TO PAY CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** [X] COMMERCIAL GENERAL LIABILITY CLAIMS MADE [ ] [X] OCCUR OWNERS & CONT PROT | 123456 | 01/01/06 | 01/01/2007 | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | PRODUCTS-COMP/OP AGG | $ 2,000,000 |
| | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 50,000 |
| | | | | | MED EXP (Any one person) | $ 5,000 |
| A | **AUTOMOBILE LIABILITY** [X] ANY AUTO [ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS [X] HIRED AUTOS [X] NON-OWNED AUTO | 246810 | 01/01/06 | 01/01/2007 | COMBINED SINGLE LIMIT | $ 1,000,000 |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE | $ |
| | **GARAGE LIABILITY** [ ] ANY AUTO | | | | AUTO ONLY-EA ACCIDENT | $ |
| | | | | | OTHER THAN AUTO ONLY | $ |
| | | | | | EACH ACCIDENT | $ |
| | | | | | AGGREGATE | $ |
| A | **EXCESS LIABILITY** [X] UMBRELLA FORM [ ] OTHER THAN UMBRELLA FORM | 1234567 | 01/01/06 | 01/01/2007 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | AGGREGATE | $ 5,000,000 |
| B | **WORKMAN'S COMPENSATION AND EMPLOYER'S LIABILITY** THE PROPRIETOR/ PARTNERS/EXECUTIVE OFFICERS ARE [INCL] [EXCL] | 135791 | 01/01/06 | 01/01/2007 | STATUTORY LIMITS | $ |
| | | | | | EACH ACCIDENT | $ 100000 |
| | | | | | DISEASE - POLICY LIMIT | $ 500000 |
| | | | | | DISEASE - EACH EMPLOYEE | $ 100000 |
| | **OTHER** | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS

Per project aggregate applies to General Liability Policy.  Manning Squires Hennig Co, Inc., the Owner—and all other parties as required by contract are named as an Additional Insured on a <u>primary</u> and <u>noncontributing basis</u>.  (<u>Please attach copy of Additional Insured endorsement</u>).  A 30 day written notice of cancellation applies.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Manning Squires Hennig Co. Inc. Box 685 Batavia, NY 14020 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPNAY, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

Office at the State Comptroller
DIVISION OF PRE-AUDIT AND ACCOUNTING RECORDS
BUREAU OF STATE EXPENDITURES

New York State Labor Law, Article 8, Section 220-a
**Subcontractor's Certification**

1.  That I am an officer of _____, a
    subcontractor on public contract no. _____ and I am
    duly authorized to make this affidavit on behalf of the firm.

2.  That I make this affidavit in order to comply with the provisions of Article 8,
    Section 220-a of the New York State Labor Law.

3.  That on _____we received from _____
    _____, the prime contractor a copy of the initial/revised schedule
    of wages and supplements for Prevailing Rate Case Number (PRC #)
    _____specified in the public improvement contract.

4.  That I have reviewed such schedule(s), and agree to pay the applicable
    prevailing wages and to pay or provide the supplements specified therein.

_____
SIGNATURE

_____
PRINT NAME

_____
TITLE

**ACKNOWLEDGMENT:**
   **STATE OF NEW YORK**
   **COUNTY OF** _____: SS.:

On this _____day of _____, 20____, before me personally came
_____to me known and known to me to be the person
described who executed the foregoing instrument and acknowledged that he
executed the same.

_____
NOTARY PUBLIC

_____
County

If this affidavit is verified by an oath administered by a notary public in a foreign
county other than Canada, it must be accompanied by a certificate authenticating
the authority of the notary who adminsters the oath. (See CPLR § 2309(c); Real
Property Law, §311,312).