**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**ZOOLOGICAL SOCIETY OF BUFFALO, INC.,**

                    **Plaintiff,**

          **-vs-**                                        **10-CV-00035-RJA-HKS**

**CARVEDROCK, LLC and**
**BURLINGTON INSURANCE COMPANY,**

                    **Defendants.**

_____

**CARVEDROCK, LLC,**

                    **Defendant/Third-Party Plaintiff,**

          **-vs-**

**DUANE WEBER INSURANCE, INC.,**

                    **Third-Party Defendant.**

_____


### REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant

to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive

motions.  Dkt. #29.

        This diversity action was commenced on January 14, 2010 by the Zoological Society

of Buffalo, Inc. ("Buffalo Zoo") seeking a declaration of its rights under an insurance policy

issued by the Burlington Insurance Company ("Burlington") to defendant CarvedRock, LLC

("CarvedRock") with respect to defense and indemnification of an underlying personal

injury lawsuit venued in New York State Supreme Court, Erie County, captioned _Oldread_

*vs. CarvedRock, LLC and Buffalo Zoological Society of Buffalo, Inc.*, Index No. 2009- 4772. CarvedRock then filed a third-party complaint against its insurance broker, Duane Weber Insurance, Inc. ("Duane Weber Insurance"), seeking "judgment over" should plaintiffs in the underlying action recover a verdict against CarvedRock.  Dkt. #37.  In lieu of answering, Duane Weber Insurance moved to dismiss the third-party complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and for improper venue, pursuant to Fed. R. Civ. P. 12(b)(3).  Dkt. #42.

Oral argument of the motion was held before the undersigned on April 21, 2011. For the reasons that follow, it is recommended that the third-party defendant's motion be granted.

## BACKGROUND

As alleged in the complaint in the underlying state court action, David Oldread was injured on April 16, 2008, while working as a laborer on the construction of the South American Rainforest exhibit at the Buffalo Zoo.  He sued the Buffalo Zoo and CarvedRock, a specialty concrete company incorporated in the State of Washington, which was working on the project under a subcontract with Manning Squires Hennig ("Manning"), the general contractor.  Travelers Indemnity Company (Travelers"), the Buffalo Zoo's insurance carrier, tendered the defense and indemnification of Mr. Oldread's personal injury action to Burlington, CarvedRock's insurance carrier at the time of the incident, on the ground that the subcontract with Manning required CarvedRock to name the Buffalo Zoo and Manning as "additional insureds" on its policy with Burlington.  *See* Dkt. #1, ¶ 12 & Exh. D. Burlington disclaimed coverage on the ground that there was no written endorsement

naming either Manning or the Buffalo Zoo as an additional insured on CarvedRock's policy. *Id.*, Exh. E.

The Buffalo Zoo then commenced this action against CarvedRock and Burlington seeking a declaration of defense and indemnification rights under the Burlington policy. Following several mediation sessions conducted pursuant to this Court's ADR program, CarvedRock filed a third-party complaint against its insurance broker, Duane Weber Insurance, based on a theory of negligent failure to procure the insurance coverage required by the subcontract with Manning. *See* Dkt. #37.  In support of jurisdiction, CarvedRock alleges upon information and belief that  Duane Weber Insurance, a State of Washington corporation, "transacted business in the State of New York;" was "authorized to conduct business in the State of New York;" "derived business in the State of New York;" and "wrote insurance policies that were in effect in the State of New York." *Id.* at ¶¶ 3-6.

Prior to discovery, Duane Weber Insurance moved to dismiss the third-party complaint on the following grounds:

1.      Contrary to the allegations made upon information and belief in the third-party complaint, Duane Weber Insurance does not transact business or otherwise maintain a business presence in New York, and therefore is not subject to personal jurisdiction under the provisions of New York's long-arm statute, N.Y.C.P.L.R. §§ 301 and 302.

2.      The Western District of New York is an improper venue for the third-party action.

Each of these grounds is addressed in turn.

## DISCUSSION AND ANALYSIS

### I.     Personal Jurisdiction

Fed R. Civ. P. 12(b)(2) permits a defendant to challenge the court's exercise of personal jurisdiction over it prior to the filing of an answer or the commencement of discovery.  Analysis of a Rule 12(b)(2) motion generally follows a two-step process.  First, the court must determine whether personal jurisdiction lies pursuant to the provisions of New York's long-arm statute.[1]  *See National Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P .L.C.*, 319 F. Supp. 2d 352, 357 (S.D.N.Y. 2004) (citing *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105 (1987)).  Second, the court must determine whether the exercise of personal jurisdiction comports with the basic requirements of due process.  *Id.*; *see also RF Intern., Ltd. v. Lion Metals, Inc.*, 2010 WL 5115179, at *1 (E.D.N.Y. Dec. 10, 2010).

In both parts of the analysis, the plaintiff (here, third-party plaintiff CarvedRock) bears the burden of showing that personal jurisdiction is proper.  *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196-97 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990). The burden is apportioned based on how far the case has progressed.  *Id.* at 197.  Before discovery, a plaintiff facing a 12(b)(2) motion to dismiss may defeat the motion by pleading, in good faith, facts constituting a *prima facie* showing of personal jurisdiction, *id.*, and the court must "construe the pleadings and affidavits in plaintiff's favor at this early stage."

---

[1]A court sitting in diversity applies the law of the forum state in determining whether it has personal jurisdiction over the defendant.  *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (citing *CutCo Industries,*

*Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

> [T]his remains true notwithstanding a controverting presentation by the moving party.  In the absence of an evidentiary hearing on the jurisdictional allegations, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor.

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985) (citations omitted);

*see also Taylor Devices, Inc. v. Walbridge Aldinger Co.*, 538 F. Supp. 2d 560, 575

(W.D.N.Y. 2008) ("A plaintiff makes a *prima facie* showing of personal jurisdiction when the

unrebutted allegations or averments reasonably support a finding that the prerequisites for

long-arm jurisdiction have been established."); *Indymac Mortgage Holdings, Inc. v. Reyad*,

167 F. Supp. 2d 222, 232 (D.Conn. 2001) ("[T]he plaintiff must make a *prima facie* showing

through affidavits and other evidence that the defendant's conduct was sufficient for the

court to exercise personal jurisdiction.").

New York courts have held that, when a plaintiff opposing a motion to dismiss

contends that discovery on the issue of personal jurisdiction is necessary, the plaintiff need

not make a *prima facie* showing of jurisdiction, but at the very least must make a "sufficient

start" toward establishing jurisdiction by showing its position to be non-frivolous.  *Peterson*

*v. Spartan Industries, Inc.*, 33 N.Y.2d 463, 467 (1974); *see also Unique Industries, Inc. v.*

*Sui & Sons Intern. Trading Corp.*, 2007 WL 3378256, at *6-7 (S.D.N.Y. Nov. 9, 2007).  To

obtain jurisdictional discovery, the plaintiff "need only demonstrate that facts 'may exist' to

exercise personal jurisdiction over the defendant."  *Ying Jun Chen v. Lei Shi*, 796 N.Y.S.2d

126, 127 (App. Div. 2005) (quoting *Peterson*, 33 N.Y.2d at 467).  However, the court is

within its discretion to deny jurisdictional discovery "when little more exists than plaintiff's bare assertions that jurisdiction is proper." *Anchor v. Novartis Grimsby Ltd.*, 2006 WL 3419846, at *9 (W.D.N.Y. Nov. 27, 2006) (denying plaintiffs' request for jurisdictional discovery, and granting defendants' Rule 12(b)(2) motion to dismiss, where plaintiffs submitted nothing to rebut defendants' submissions unequivocally denying "any jurisdictionally meaningful contact with New York."), *aff'd*, 282 Fed. Appx. 872 (2d Cir. 2008); *see also Ivoclar Vivadent, Inc. v. Ultident, Inc.*, 2005 WL 1421805, at *5 (W.D.N.Y. June 15, 2005) (denying request for jurisdictional discovery where defendant submitted an unrebutted affidavit "that provides all necessary facts and answers all questions regarding jurisdiction."); *Wafios Machinery Corp. v. Nucoil Industries Co.*, 2004 WL 1627168, at *5-*6 (S.D.N.Y. July 21, 2004) (denying request for jurisdictional discovery related to a foreign defendant who provided an affidavit categorically denying contacts with New York).

Thus, to defeat a well-supported Rule 12(b)(2) motion to dismiss, even at the pre-discovery *prima facie* stage, the plaintiff must come forward with "more than mere legal conclusions restated as statements of fact." *Guo Jin v. EBI, Inc.*, 2008 WL 896192, at *2 (E.D.N.Y. Mar. 31, 2008) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184-85 (2d Cir. 1998)). Conclusory allegations as to the presence of jurisdiction, "particularly those stated only upon 'information and belief,' " are insufficient. *Id.* (quoting *Chong v. Healthtronics, Inc.*, 2007 WL 1836831, at *5 (E.D.N.Y. June 20, 2007)). "Surely a plaintiff must make some specific factual showing in order to assert [personal] jurisdiction. A plaintiff cannot be permitted to effect service of process on an out-of-state defendant on the mere basis that such plaintiff hopes somehow and somewhere to find enough facts to create grounds

for jurisdiction." *Socialist Workers Party v. Attorney General of United States*, 375 F. Supp. 318, 325 (S.D.N.Y. 1974).

### A.      New York's Long-Arm Statute

Under New York's long-arm statute, there are two ways in which a federal court sitting in diversity in New York may exercise personal jurisdiction over a non-resident defendant: "general" jurisdiction under N.Y.C.P.L.R. § 301, or "specific" jurisdiction under N.Y.C.P.L.R. § 302.

Section 301 provides, simply, that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  As construed by the New York courts, this general provision allows a court to exercise jurisdiction over a foreign corporation on any cause of action if the defendant is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981), *quoted in Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (additional citations omitted).  A corporation is considered to be "doing business" and "present" in New York, and therefore subject to personal jurisdiction, "if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (internal citation and quotation marks omitted), *cert. denied*, 532 U.S. 941 (2001). To make this determination, courts apply a "simple and pragmatic" test, focusing on a number of factors including: "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and

the presence of employees of the foreign defendant in the state." *Hoffritz for Cutlery*, 763 F.2d at 58 (citing cases).

In this case, Duane Weber, President of Duane Weber Insurance, has submitted sworn affidavits stating that Duane Weber Insurance is incorporated and licensed in the State of Washington.  It is not licensed to sell insurance in the State of New York, and has never done so.  Dkt. #42-6, at ¶ 3-5.  It does not maintain an office in New York; does not advertise in the New York market or otherwise solicit business in New York; does not maintain any bank accounts or own any other property in New York; and does not have any employees in New York.  *See id.* at ¶¶ 8-12.

CarvedRock has not made any showing, by affidavit upon personal knowledge or otherwise, to counter these sworn statements, or to provide any factual support for the allegations in the third-party complaint, made upon information and belief, regarding Duane Weber Insurance's business presence in New York for the purposes of establishing personal jurisdiction under section 301.  Indeed, CarvedRock has not asserted or argued that Duane Weber Insurance is subject to general jurisdiction under section 301.  Rather, CarvedRock invokes only section 302(a)(1) of New York's long-arm statute as a basis for the Court's exercise of personal jurisdiction over Duane Weber Insurance.  *See* Dkt. #46, ¶¶ 7-11.[2]  Accordingly, the Court finds no factual basis for exercising personal jurisdiction over Duane Weber Insurance pursuant to section 301, and turns to the question of specific jurisdiction under section 302(a)(1).

---

[2] Docket No. 46 is the affidavit of CarvedRock's attorney, James J. Nash.  CarvedRock has not submitted an affidavit or declaration by anyone with first hand personal knowledge of the events giving rise to the causes of action asserted in the third-party complaint.

Section 302(a) provides:

Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1.  transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2.  commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3.  commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4.  owns, uses or possesses any real property situated within the state.

N.Y.C.P.L.R. § 302(a).

A plain reading of this provision in light of the information presented to the Court in connection with this motion reveals that subsection (1) of section 302(a) provides the only possible basis for the exercise of personal jurisdiction over Duane Weber Insurance in this matter.  Subsection (2) cannot apply, since there is no dispute that the "tortious act" complained of in the third-party complaint–negligent failure to procure the insurance coverage required by the subcontract–was committed, if at all, in the State of Washington. Neither does subsection (3) apply, since any injury associated with the tort of negligent procurement of a contract "must be deemed to occur where the acts were committed [*i.e.*,

Washington], not where plaintiff ultimately experienced some financial consequences." *Insurance Co. of State of Pa. v. Centaur Ins. Co.*, 590 F. Supp. 1187, 1189 (S.D.N.Y. 1984). Subsection (4) does not apply, since it is not disputed that Duane Weber Insurance does not own, use or possess any real property in New York.

As articulated by the Second Circuit, section 302(a)(1) permits the exercise of personal jurisdiction over a non-domiciliary if two conditions are met: "[F]irst, the nondomiciliary must 'transact business' within the state; second, the claim against the nondomiciliary must arise out of that business activity." *CutCo Indus.*, 806 F.2d at 365 (citing *McGowan*, 52 N.Y. 2d at 272). In this case, CarvedRock does not forcefully assert that Duane Weber Insurance, a State of Washington domiciliary with no business presence in New York State, transacted any business within New York to permit the exercise of personal jurisdiction under the first clause of section 302(a)(1). Rather, CarvedRock contends that Duane Weber Insurance's sale of an insurance policy to CarvedRock in Washington carried with it the primary intention of providing coverage for losses that might occur in New York State, thereby bringing Duane Weber Insurance within the second clause of section 302(a)(1) authorizing jurisdiction over a non-domiciliary corporation that "contracts anywhere to supply … services in the state."

The "contracts anywhere" clause was added to section 302(a)(1) by the New York State Legislature in 1979 "in order to 'ease the plight of New York residents seeking to obtain jurisdiction over those outside its borders who may be deemed virtually or constructively to do business in this state.' " *Bank Brussels Lambert v. Fiddler Gonzalez*

& *Rodriguez*, 171 F.3d 779, 789 (2d Cir. 1999) (quoting *Waldorf Associates, Inc. v. Neville*,

533 N.Y.S.2d 182, 185 (Sup.Ct. 1988), *aff'd*, 547 N.Y.S.2d 556 (App. Div. 1989)).

> This provision captures cases where there are minimal contacts in New York, and, for example, a contract is made elsewhere for goods to be delivered or services to be performed in New York.  Thus, even if a defendant never enters the state to negotiate one of these contracts, to complete performance or for any other reason, the second prong of § 302(a)(1) can provide long-arm jurisdiction over a defendant who has minimal contacts with the state and who has entered a contract anywhere to supply goods or services in the state.

*Id.*; *see also Island Wholesale Wood Supplies, Inc. v. Blanchard Industries, Inc.*, 476

N.Y.S.2d 192,  194 (App. Div. 1984) (addition of "contracts anywhere" clause intended to

abrogate "mere shipment" rule established by prior case law, and "to extend New York

long-arm jurisdiction to its constitutional limits.").   The New York Court of Appeals has

observed that:

> Essential to the maintenance of a suit against a nondomiciliary under [section 302(a)(1)] is the existence of some articulable nexus between the business transacted and the cause of action sued upon.  Indeed, it is this basic requirement that differentiates the long-arm authority conferred by [section 302(a)(1)] from the more traditional authority of the New York courts under CPLR 301 to exercise in personam jurisdiction over foreign defendants who are "present" within the State by virtue of their "doing business" here.

*McGowan v. Smith*, 52 N.Y.2d at 272.

Thus, in order to acquire personal jurisdiction over a non-domiciliary defendant

under section 302(a)(1), the courts require that the non-domiciliary defendant's transaction

of business in New York "bear a substantial relationship to the transaction out of which the

instant cause of action arose."   *Id.*  As stated by the Second Circuit:

> [T]o gain the benefit of the New York long-arm statute, the [plaintiff] must demonstrate that [the non-domiciliary defendant] purposefully availed himself of the privilege of conducting activities within New York (thus satisfying due process concerns), and that the [plaintiff's] causes of action arose out of his

activities within the state.  A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.

*Henderson v. I.N.S.*, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotations, citations, and alterations omitted).  The requirement of a "strong nexus" between the plaintiff's cause of action and the non-domiciliary's in-state conduct applies with equal force to both the "contracts anywhere" clause and the "transacts business" clause of section 302(a)(1).

*Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983) (citing *McGowan*, 52 N.Y.2d at 272; *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355, 357 (2d Cir. 1970)).

In this case, the "negligent failure to procure insurance" and "breach of contract" claims asserted in the third-party complaint clearly arose out of the brokerage transaction between Duane Weber Insurance, a Washington State insurance agent, and CarvedRock, a local Washington State customer, which occurred in the State of Washington.  As discussed above, the Court's review of the materials on record reveals that Duane Weber Insurance has never sold insurance in the State of New York, and has never been licensed to do so.  It does not maintain an office or bank accounts, advertise or solicit business, or own any property in New York.  Indeed, there is no indication in the record presently before the Court that Duane Weber Insurance has ever engaged in any activities in New York State that could reasonably be construed as substantially related to the conduct complained of in the third-party complaint.

CarvedRock contends that there is at least a question of fact warranting further discovery as to whether the brokerage and sale of the Burlington policy, which admittedly

occurred in the State of Washington, was primarily intended to provide coverage for losses that might occur as a result of services performed on the Buffalo Zoo project, bringing Duane Weber Insurance's conduct within the specific jurisdictional provision of the "contracts anywhere" clause of section 302(a)(1).  To support this contention, CarvedRock refers to documents it submitted to the Burlington Insurance Company in connection with its application for Commercial General Liability coverage, in which it listed the Buffalo Zoo (and the Seneca Park Zoo in Rochester) in response to questions on the application form regarding work performed by CarvedRock in New York (Dkt. #46-1, at 6) and projects undertaken by CarvedRock in the last five years (*id*. at 8).  According to CarvedRock, this information should reasonably have put the broker on notice that it was to obtain an insurance policy for CarvedRock that would cover losses likely to occur in New York State, and raises questions regarding the broker's knowledge of the "additional insured" requirements of the subcontract with Manning, all having direct bearing on the issue as to whether Duane Weber Insurance "contract[ed] anywhere to supply goods or services in the state" within the meaning of section #02(a)(1).

However, even construed in the light most favorable to plaintiff, these documents contain no information to indicate that Duane Weber Insurance itself ever engaged in purposeful activities within the State of New York having any articulable nexus with CarvedRock's cause of action for negligent performance or breach of the brokerage contract entered into in the State of Washington.  As set forth in Mr. Weber's reply affidavit (Dkt. #47-2), all brokerage activities undertaken by Duane Weber Insurance with respect to CarvedRock's policy with Burlington took place in the State of Washington, between two Washington domiciliaries.  The Commercial General Liability insurance policy which Duane

-13-

Weber Insurance brokered for CarvedRock, written by the Burlington Insurance Company, provides coverage to CarvedRock wherever it does business.  This Court's reading of the policy reveals no language to indicate that it was primarily intended to provide coverage for losses that might occur as a result of services performed in New York State, as compared to any other state.  As explained by Mr. Weber, the information pertaining to CarvedRock's performance of work in New York State was provided to Burlington in response to certain underwriting questions posed in an industry standard application form, and any consequences attached to the insurance underwriting significance of this information should reasonably be borne by the insurer, not by the broker.

Nor has CarvedRock cited any authority to support the exercise of personal jurisdiction by a federal court sitting in New York over an insurance broker domiciled in the State of Washington based upon the sale of an insurance policy to a local customer in the State of Washington.  The single case cited by CarvedRock, *Bunkoff General Contractors Inc. v. State Auto. Mut. Ins. Co.*, 745 N.Y.S.2d 247 (App. Div. 2002), is not persuasive.  In that case, Bunkoff, a New York corporation, was the general contractor for the construction of an apartment complex in Cohoes, New York.  Bunkoff entered into a subcontract with Hatch, an Ohio corporation, for the performance of framing work on the project.  As required by the subcontract, Hatch procured a commercial general liability insurance policy naming Bunkoff as an additional insured.  The policy was written by the State Automobile Mutual Insurance Company, also an Ohio company.  Subsequently, one of Hatch's employees sued Bunkoff seeking to recover for personal injuries allegedly sustained while working on the project, and Bunkoff sought defense and indemnification from State Automobile, which refused.  Bunkoff then commenced a declaratory judgment action in

New York State Supreme Court seeking a declaration of State Automobile's obligations under the insurance policy, and State Automobile moved to dismiss for lack of personal jurisdiction.  The trial court granted the motion and dismissed the declaratory judgment action. The Appellate Division reversed, finding that although the mere issuance of an insurance policy was insufficient to confer personal jurisdiction over the insurance company, Bunkoff had produced the underlying certificate of insurance specifically naming it as an additional insured under the policy with respect to the work performed by Hatch on the project.  According to the court, this was "sufficient to demonstrate that additional facts 'may exist' regarding whether [State Automobile] knowingly insured a New York corporation …," making a "sufficient start" toward establishing personal jurisdiction over the Ohio company pursuant to section 302(a)(1).  *Id.* at 249 (quoting *Peterson v. Spartan Indus.*, 33 N.Y.2d at 467).

In this case, unlike Bunkoff, CarvedRock is a non-domiciliary seeking personal jurisdiction in New York over another non-domiciliary based on insurance brokerage conduct which occurred entirely within another state.  CarvedRock has produced no certificate of insurance or other documentation to indicate that the policy Duane Weber Insurance sold to CarvedRock, written by Burlington, was specifically intended to provide coverage for liability arising out of work performed on the Buffalo Zoo project, or which could otherwise reasonably be construed to put Duane Weber Insurance on notice that its brokerage activity on behalf of CarvedRock in the State of Washington might subject it to personal jurisdiction in the State of New York.  In this Court's view, the mere reference to CarvedRock's work in New York in the insurance application submitted to Burlington cannot possibly constitute in-state conduct on the part of Duane Weber Insurance

-15-

sufficient to establish a strong nexus between CarvedRock's negligent procurement claim and Duane Weber Insurance's business activities in New York so as to allow this Court to exercise personal jurisdiction over Duane Weber Insurance pursuant to the "contracts anywhere" clause of section 302(a)(1).  In the absence of more persuasive authority, or any further showing that evidence "may exist" to connect the causes of action alleged in the third-party complaint to the non-domiciliary defendant's activities within the state, the Court finds no reasonable basis for the exercise of personal jurisdiction over Duane Weber Insurance pursuant to section 302(a)(1).

> **B.     Due Process**

Similarly, there is no indication in the record before the Court to indicate that further discovery might establish how the exercise of personal jurisdiction over Duane Weber Insurance in this case would comport with the basic requirements of due process.  In this regard, "the Due Process Clause limits the exercise of jurisdiction to persons having certain 'minimum contacts' with the forum state."  *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d Cir.1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) and *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)), *cert. denied*, 523 U.S. 1106 (1998).  Consistent with due process, a court may exercise personal jurisdiction only over a defendant whose " 'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' "  *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Thus, to justify the exercise of personal jurisdiction, the plaintiff must make a showing of  " 'some act by which the defendant purposely avails itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

As discussed above, CarvedRock has made no such showing.  To the contrary, the record presented to the Court reveals that Duane Weber Insurance conducts no business, maintains no office, owns no property, has no bank accounts, and has no employees in New York State.  There is simply no indication that Duane Weber Insurance itself engaged in any activities in New York to create a substantial connection with the forum state, or otherwise purposefully availed itself of the privilege of conducting business activities within the forum such that it should reasonably anticipate being haled into court here.  Under these circumstances, requiring Duane Weber Insurance to defend itself in a forum where it engaged in no economic activity would, in this Court's view, offend traditional notions of "fair play and substantial justice."  *International Shoe*, 326 U.S. at 320.

Based on this analysis, this Court finds that CarvedRock has failed to demonstrate the possible existence of any additional facts regarding purposeful conduct of business activities by Duane Weber Insurance within the State of New York that would warrant further discovery in aid of establishing personal jurisdiction under N.Y.C.P.L.R. § 302(a)(1).  Accordingly, it is respectfully recommended that the third-party defendant's motion to dismiss for lack of personal jurisdiction be granted, and the third-party complaint be dismissed.

## II.     Venue

Duane Weber Insurance also moves to dismiss the third-party complaint on the ground that, even if the Court should find CarvedRock has made a sufficient start toward a *prima facie* showing of personal jurisdiction, venue of the third-party action in the Western District of New York is improper.  Duane Weber Insurance relies on 28 U.S.C. § 1391(a), the general venue statute applicable to cases in which federal subject matter jurisdiction is based solely upon diversity jurisdiction.[3]

However, the general rule as it has developed in the district courts within the Second Circuit  is that, since the venue statutes are concerned with the institution of the original action and not with third-party actions, third-party defendants ordinarily lack standing to challenge venue.  *See, e.g., Foremost Guar. Corp. v. Public Equities Corp.*, 1988 WL 125667, at *5 (S.D.N.Y. Nov. 10, 1988) (citing 1 J. Moore, MOORE'S FEDERAL PRACTICE ¶ 0.140[6] (2d ed. 1988)); *see also Acres Intern. Corp. v. Moore Business Forms, Inc.*, 1989 WL 158321, at *3 (W.D.N.Y. Dec. 26, 1989) (where third-party plaintiff has made *prima facie* showing of personal jurisdiction, third-party defendant lacks standing to object to venue).  Third-party defendant Duane Weber Insurance has not cited any pertinent authority or advanced any compelling reasons why, should the motion to dismiss for lack of personal jurisdiction be denied, this general rule should not apply here.

---

[3]28 U.S.C. § 1391(a) provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Accordingly, it is respectfully recommended that, should the District Court deny the third-party defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court should also deny the third-party defendant's Rule 12(b)(3) motion to dismiss for improper venue.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that third-party defendant Duane Weber Insurance's motion (Dkt. #42) to dismiss the third-party complaint for lack of personal jurisdiction be granted.

In the alternative, it is respectfully recommended that, should the District Court deny the third-party defendant's motion to dismiss for lack of personal jurisdiction, it should also deny the motion to the extent it seeks dismissal of the third-party complaint based upon improper venue.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b), and Rule 72(b) of the Local Rules of Civil Procedure for the Western District of New York.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the

magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the  District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Local Rule 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.


SO ORDERED.


DATED:      **Buffalo, New York**
            **October 12, 2011**


                                 **s/ H. Kenneth Schroeder, Jr.**
                                 **H. KENNETH SCHROEDER, JR.**
                                 **United States Magistrate Judge**