**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**ZOOLOGICAL SOCIETY OF BUFFALO, INC.,**

                              **Plaintiff,**                             **10-CV-35A (Sr)**

**v.**

**CARVEDROCK, LLC and**
**BURLINGTON INSURANCE COMPANY,**

                             **Defendants.**

---

### REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #29.

Currently before the Court is the Zoological Society of Buffalo, Inc.'s ("Buffalo Zoo's"), motion for summary judgment declaring that the Buffalo Zoo is an additional insured on the insurance policy issued by Burlington Insurance Company ("Burlington"), to CarvedRock, LLC ("CarvedRock"), and that Burlington owes the Buffalo Zoo defense and indemnity on the personal injury action precipitating this action (Dkt. #89); and Burlington's motion for summary judgment declaring that the Buffalo Zoo is not an additional insured under the insurance policy and that Burlington does not owe coverage to CarvedRock with respect to the Buffalo Zoo's claim for contractual indemnity and breach of contract.  Dkt. #90.

For the following reasons, it is recommended that the Buffalo Zoo's motion be denied and Burlington's motion be granted in so far as it seeks judgment declaring that the Buffalo Zoo is not an additional insured under the Burlington policy issued to CarvedRock.

## BACKGROUND

In 2006, the Buffalo Zoo contracted with Manning Squires Henning ("MSH"), to act as general contractor on the construction of the South American Rain Forest Exhibit. Dkt. #89-2.  MSH entered into a subcontract with CarvedRock, a specialty concrete company, which required CarvedRock to obtain Commercial General Liability ("CGL"), coverage with limits of insurance of not less than $1 million per occurrence.  Dkt. #89-3, p.8.  The subcontract provides that

> Contractor, Owner and all other parties required of the Contractor, shall be included as additional insureds on the Commercial General Liability, using ISO Additional Insured Endorsement . . . or an endorsement providing equivalent coverage to the additional insureds.

Dkt. #89-3, p.8.  The subcontract defines MHS as the Contractor and the Buffalo Zoo as the Owner.  Dkt. #89-3, p.4.

CarvedRock procured a CGL policy from Burlington which contains the following endorsement:

> Any person or organization with whom you have agreed, in a written contract, that such person or organization should be added as an insured on your policy, provided such written contract is fully executed prior to an "occurrence" in which coverage is sought under this policy.

Dkt. #90-6, p.44.

As set forth in the complaint in the underlying state action, *Oldread v. Carved Rock, LLC and Buffalo Zoological Society of Buffalo, Inc.*, Index No. 2009-4772 (N.Y. Sup. Ct., Erie Cty), David Oldread was injured while working as a laborer on the construction of the South American Rainforest exhibit at the Buffalo Zoo on April 16, 2008.  Dkt. #90-4.  The Buffalo Zoo asserted cross-claims against CarvedRock, seeking common law indemnification or contribution and contractual indemnification from CarvedRock and claiming that CarvedRock failed to procure insurance for the Buffalo Zoo.  Dkt. #89-6.  CarvedRock asserted cross-claims against the Buffalo Zoo seeking common law indemnification and contribution.  Dkt. #89-7.

By letter dated April 25, 2008, MSH's insurer, Travelers Indemnity Company  ("Travelers'"), tendered the Buffalo Zoo's defense and indemnification of Mr. Oldread's personal injury action to CarvedRock, asserting that the contract between MSH and CarvedRock required CarvedRock to name MSH and the Buffalo Zoo as additional insureds. Dkt. #90-9.  Burlington disclaimed coverage. Dkt. #90-10, 11 & 13. The Buffalo Zoo commenced this action seeking a declaration of rights under the Burlington policy issued to CarvedRock.  Dkt. #1.

## DISCUSSION AND ANALYSIS

The Buffalo Zoo seeks a declaration that it is an additional insured under the insurance policy issued by Burlington to CarvedRock and that Burlington is obligated to defend and indemnify the Buffalo Zoo and to reimburse the Buffalo Zoo for all legal fees, costs and disbursements it has incurred defending itself in the *Oldread*

litigation.  Dkt. #89.  Specifically, the Buffalo Zoo argues that because CarvedRock

agreed in the subcontract with MSH that the Buffalo Zoo would be added as an

additional insured, the Buffalo Zoo is covered by the Burlington policy.  Dkt. #89, ¶ 36.


Burlington argues that the Buffalo Zoo is not covered under the insurance

policy issued to CarvedRock because CarvedRock did not enter into a written contract

with the Buffalo Zoo.  Dkt. #90-16, pp. 6 & 11.  Burlington argues that the Buffalo Zoo is

seeking to "re-write the policy to extend coverage not only to those 'with whom'

CarvedRock agreed, but also to those 'for whom' CarvedRock agreed" to provide

coverage.  Dkt. #90-16, pp.6-7.


"In a declaratory judgment action to declare the parties' rights under an

insurance policy, the party asserting that someone other than a named insured is an

insured under the policy bears the initial burden of submitting proof in evidentiary form

that the alleged insured is, in fact, an insured within the meaning of the policy."

*Preferred Mut. Ins. Co. v. Ryan*, 175 A.D.2d 375, 378 (3rd Dep't 1991).


"An insurance policy is a contract between the insurer and the insured."

*Bovis Lend Lease LMB v. Great Am. Ins. Co.*, 53 A.D.3d 140, 145 (1st Dep't 2008).  As

a result, the extent of coverage "is controlled by the relevant policy terms, not by the

terms of the underlying trade contract that required the named insured to purchase

coverage."  *Id.; see Travelers Indem. Co. v. American & Foreign Ins. Co.,* 286 A.D.2d

626 (1st Dep't 2001) ("court properly declined to give evidentiary weight to the insurance

procurement provisions of the subcontract between plaintiff general contractor and the injured party's employer, since it is the policy provisions that control and not the provisions of the subcontract.").

"Generally, the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies." *State of N.Y. v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (1985). "[W]ell-established principles governing the interpretation of insurance contracts . . . provide that the unambiguous provisions of an insurance policy, as with any written contract, must be afforded their plain and ordinary meaning, and that the interpretation of such provisions is a question of law for the court." *Broad St., LLC v. Gulf Ins. Co.*, 37 A.D.3d 126, 130-31 (1st Dep't 2006). "If, however, there is ambiguity in the terms of the policy, any doubt as to the existence of coverage must be resolved in favor of the insured and against the insurer, as the drafter of the agreement." *Id.* at 131. "A contract of insurance is ambiguous if the language therein is susceptible of two or more reasonable interpretations whereas, in contrast, a contract is unambiguous if the language has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* (internal quotations and citations omitted) (alteration in original).

In the most recent New York State Supreme Court, Appellate Division case addressing the scope of  additional insured coverage, the Appellate Division, First

Department determined that the owner of a construction site (AB Green), was not an

additional insured on a policy issued to a company (Ferrara), which provided concrete

to a subcontractor (Scalmandre), even though Ferrara agreed in a purchase order to

assume all of the obligations and risks which the subcontractor assumed towards the

owner.  *AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc.,* 102 A.D.3d

425 (1ˢᵗ Dep't 2013).  The CGL policy at issue provided that an organization is added as

an additional insured

> when you and such . . . organization have agreed in writing
> in a contract or agreement that such . . . organization be
> added as an additional insured on your policy.

*Id.* at 426.  Relying upon its prior decision in *Linarello v. City University of New York,* the

Appellate Division required that

> there be an express written agreement between Ferrara and
> Green for Green to be an additional insured.  The language
> of the insurance policy in *Linarello* is exactly the same as the
> policy here.  It specifically provides that there must be a
> written agreement between the insured and the organization
> seeking coverage to add that organization as an additional
> insured.  No such agreement exists here.  Absent such an
> agreement, the plain terms of the policy have not been met
> and Green cannot seek coverage from Liberty as an
> additional insured.

*AB Green*, 102 A.D.3d at 426 (internal citation omitted), *citing Linarello*, 6 A.D.3d 192,

195 (1ˢᵗ Dep't 2004).  The Appellate Division explicitly rejected Green's argument that

the assumption of obligations language in the purchase order between the

subcontractor and the concrete company sufficed to establish a written agreement

between Ferrara and Green because

> Green's argument requires reading terms into the policy that
> do not exist.  The policy does not provide that there only be

> some writing, but rather that there be a written contract
> between the named insured and the organization seeking
> coverage.

*Id.* at 427.


In its decision, the Appellate Division recognized that "policies containing broader language have been found to allow for an agreement naming an additional insured without an express contract between the parties*. Id., citing American Home Assur. Co. v. Zurich Ins. Co.*, 26 Misc. 3d 1223 (Sup.Ct. Kings Cty Feb. 17, 2010).  In *American Home Assurance*, Hatzel & Buehler, Inc. entered into a contract with Helmsley-Spear Inc. to perform electrical work at the Empire State Building.  *Id.* Pursuant to that contract, Hatzel was required to procure insurance which would cover Trump Empire State, Inc. and Helmsley-Spear as additional insureds.  *Id.*  The insurance policy issued to Hatzel & Buehler, Inc. extended coverage to

> any person or organization with whom you [the named
> insured, Hatzel] have agreed in a written contract to provide
> insurance as is afforded under this policy.

26 Misc.3d 1223, 2010 WL 549138, at *4 (alteration in original).  The insurance company, citing *Linarello*, argued that the policy limits the additional insured coverage to the person or organization with whom the named insured has entered into a contract, thereby justifying its denial of coverage to Trump Empire State, Inc.  *Id.* at 5.  The trial court disagreed, stating:

> the language in the additional insured endorsement at issue
> in this case differs crucially from the language of the
> endorsement in the Zurich policy.  The *Linarello* additional
> insured endorsement provided coverage for "any person or

> organization for whom you [the insured] are performing
> operations when you and such . . . organization have agreed
> in writing in a contract . . . that *such* [emphasis added]
> person or organization be added as an additional insured on
> your policy."  The additional insured provision of [this] Zurich
> policy is less restrictive.  It extends coverage to any person
> or organization with whom the insured Hatzel agreed in a
> written contract to provide insurance for.  Thus, Zurich's
> additional insured endorsement is not so restrictive as to
> limit coverage to only the person or organization with whom
> Hatzel, the named insured, contracted.

*Id.* (alterations in original).


Similarly, the trial court in *Plaza Construction Corporation v. Zurich American Insurance Company* found that where the subcontractor, O'Farrell Scaffolding, promised in a contract with the general contractor, Plaza Construction, to procure additional insurance coverage for both Plaza Construction and the owner of the construction site, Trump Village, policy language providing coverage to

> Any person or organization with whom you [O'Farrell] have
> agreed, through written contract, agreement or permit to
> provide additional insured coverage,

was "significantly more broad" than the coverage set forth in the *Linarello* policy and encompassed Trump Village as an additional insured.  2011 N.Y. Slip Op 30709, 2011 WL 1212719 (Sup. Ct. New York Cty Mar. 23, 2011).


Although *American Home* and *Plaza Construction* distinguished the policy language at issue in *Linarello,* the Court notes that another New York trial court

subsequently analyzed nearly identical policy language[1] and found no such distinction.

In *Murnane Building Contractors, Inc. v. Zurich American Insurance Company*,

Murnane, the general contractor for the construction of a Wal-Mart store, entered into a

contract with Luck Brothers which required Luck Brothers to name both Murnane and

Wal-Mart as additional insureds on their CGL policy.  33 Misc.3d 1215 (Sup. Ct. Suffolk

Cty Oct. 5, 2011), *rev'd on other grounds*, 107 A.D.3d 674 (2nd Dep't 2013).  Although

acknowledging the finding of *American Home* and *Plaza Construction*, the trial court

determined that "by the plain terms of the Zurich policy, Wal-Mart is not an additional

insured because it had no written contracts with Luck."  *Id.; See also Best Buy Co., Inc.*

*v. Sage Electrical Contracting, Inc.*, 2009 Slip Op. 30208, 2009 WL 289675 (Sup. Ct.

New York Cty Jan. 23, 2009) (requiring contractual privity between the named insured

and the party seeking coverage as an additional insured where the CGL policy provided

that "[a]ny person or organization with whom you have entered into a written contract,

agreement or permit requiring you to provide insurance such as is afforded by the

[CGL] Coverage Form will be an additional insured").

In the instant case, the CGL policy provides additional insured coverage

to organizations with whom CarvedRock agreed, in a written contract, to add such

organization as additional insured on CarvedRock's policy.  Contrary to the suggestion

---

[1] The Zurich insurance policy provided additional insured coverage to
Any person or organization with whom you have agreed, through
written contract, agreement or permit, executed prior to the loss to
provide primary additional insured coverage.

of the *American Home* and *Plaza Construction* decisions, but in accordance with the

decisions in *Murnane* and *Best Buy*, this Court finds that the language in the Burlington

policy clearly and unambiguously requires that the named insured execute a contract

with the party seeking coverage as an additional insured.  As there is no dispute that

CarvedRock did not enter into a written contract with the Buffalo Zoo, CarvedRock's

agreement in its contract with MSH to procure coverage for the Buffalo Zoo is

insufficient to afford it coverage as an additional insured under the plain language of the

Burlington policy.

As to Burlington's motion for summary judgment declaring that it does not

owe coverage to CarvedRock with respect to the cross-claims asserted by the Buffalo

Zoo against CarvedRock for contractual indemnity and breach of contract in the

underlying state court action, the Court agrees with CarvedRock (Dkt. #93), that such a

determination is beyond the scope of the declaratory judgment action commenced by

the Buffalo Zoo in this court.

,

## CONCLUSION

For the reasons set forth above, it is recommended that the Buffalo Zoo's

motion (Dkt. #89), be denied and Burlington's motion (Dkt. #90), be granted in so far as

it seeks judgment declaring that the Buffalo Zoo is not an additional insured under the

Burlington policy issued to CarvedRock.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis

for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
              **May  21, 2014**

                                    *s/ H. Kenneth Schroeder, Jr.*
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**